**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| COBBLER NEVADA, LLC, | ) | Case No. 15-cv-7536 |
| | ) | |
| Plaintiff, | ) | Judge Matthew F. Kennelly |
| | ) | |
| v. | ) | |
| | ) | |
| DOES 1-25, | ) | |
| | ) | |
| Defendant. | ) | |

**EXHIBITS TO PLAINTIFF COBBLER NEVADA, LLC'S RESPONSE TO**
**DEFENDANT JOHN DOE #2'S MOTION TO QUASH SUBPOENA**

1.  *Raw Films, Ltd. v. John Does 1-15*, CIV.A. 11-7248, 2012 WL 1019067 (E.D. Penn. Mar. 26, 2012);

2.  *Malibu Media, LLC v. John Does 1-49*, No. 12-CV-6676, 2013 WL 4501443 (N.D. Ill. 2013);

3.  *Malibu Media, LLC v. John Doe*, No. 13-C-8484, 2014 WL 1228383 (N.D. Ill. March 24, 2014;

4.  *reFX Audio Software, Inc. v. Does 1-111*, No. 13-C-1795, 2013 WL 3867656 (N.D. Ill. July 23, 2013)

5.  *The Thompsons Film, LLC v. Does 1-60*, No. 13-C-02368, 2013 WL 4805021 (N.D. Ill. September 6, 2013;

6.  *Purzel Video GmbH v. Does 1-108*, No. 13-cv-0792, 2013 WL 6797364 (N.D. Ill. December 19, 2013); and

7.  *Malibu Media, LLC v. Reynolds*, No. 13-c-6672, 2013 WL 870618 (N.D. Ill. March 20, 2013).

# EXHIBIT 1

2012 WL 1019067
Only the Westlaw citation is currently available.
United States District Court,
E.D. Pennsylvania.

RAW FILMS, LTD.
v.
JOHN DOES 1–15.

Civil Action No. 11–7248.  |  March 26, 2012.

**Attorneys and Law Firms**

Christopher P. Fiore, Fiore & Barber LLC, Harleysville, PA, for Plaintiff.

*MEMORANDUM*

McLAUGHLIN, District Judge.

**\*1** The plaintiff filed this suit on November 21, 2011, alleging that each of fifteen Doe defendants infringed the copyright in its motion picture by reproducing and distributing it over the Internet using a peer-to-peer file-sharing protocol called BitTorrent. The Doe defendants are identified solely by internet protocol ("IP") addresses corresponding to the Internet connections alleged to have been used to infringe the plaintiff's copyright. The Court granted an earlier motion by the plaintiff for leave to file subpoenas on the Internet Service Providers ("ISP") servicing the IP addresses identified in the complaint to help determine the identity of the Doe defendants. No Doe defendant to date has been identified by the plaintiff or served with the complaint. Two of the Doe defendants, made aware of the subpoenas by their ISPs, have moved to quash those subpoenas and sever the case as to all other Doe defendants. Because the joinder of the fifteen Doe defendants is proper and quashing the subpoenas issued would be inappropriate at this stage of the litigation, the Court will deny the defendants' motions.

*I. Complaint*

The plaintiff claims that the Doe defendants, each identified only by an IP address, willfully copied, reproduced, redistributed, performed, and displayed its motion picture, "Bareback Street Gang" (the "Work") by means of the file-sharing protocol known as BitTorrent, in violation of federal copyright law, 17 U.S.C. § 106(1)*et seq.* Compl. ¶¶ 44–49.

*A. BitTorrent*

According to the plaintiff, the BitTorrent protocol facilitates file-sharing by permitting multiple users to download and upload the same file simultaneously. An initial "seeder" begins the process by using a BitTorrent client program to break the file intended for sharing ("original file") into identically sized "pieces," each of which has a unique alphanumeric hash code, and creating a "torrent," which records those hash codes and permits other client programs to identify, download, and reassemble the pieces into the original file. *Id.* ¶¶ 13–21.

When other users, known as "peers," download the torrent file, the BitTorrent protocol signals that those peers are seeking to download the original file, and the seeder begins to distribute pieces to those users. Once a peer has downloaded a piece, it serves as a source of that piece to other peers possessing the torrent and seeking to download the original file. When a peer has downloaded all of the pieces, the client program continues to distribute the file like the initial seeder. In this way, the initial seeder and peers serve to share and distribute the original file in an activity known as a "swarm." *Id.* ¶¶ 28–31.

*B. Activity of Does 1–15*

Each of the Doe defendants is alleged to have participated in the same "swarm" sharing and distributing the plaintiff's Work. *Id.* ¶ 32.The plaintiff used forensic software to track and identify BitTorrent activity involving a specific copy of the Work that was identified by its own "Unique Hash Number." The investigation identified fifteen IP addresses, corresponding to the Doe defendants here, that participated in the same swarm by transmitting a piece of this version of the Work using the BitTorrent protocol. Each IP address connected to a server established by the plaintiff's investigator and transmitted a piece of the same copy of a file constituting the plaintiff's Work between July and October 2011. *Id.* ¶¶ 35–40, Ex. A.

**\*2** By participating in the same swarm, the defendants are each alleged to have directly infringed the plaintiff's copyright in the Work and to have "induced, caused[,] or materially contributed to the infringing conduct" of the other defendants. *Id.* ¶¶ 48, 54.

## II. Procedural History

After the plaintiff filed suit but before identifying any Doe defendants, it moved for leave to serve subpoenas on Cavalier Telephone, Comcast Cable, and Verizon Internet Services, the ISPs that service the fifteen IP addresses the plaintiff alleges were used to infringe its copyright. The subpoenas commanded each ISP served to provide the plaintiff with the "true name, address, telephone number, e-mail address and Media Access Control address of the Defendant to whom the ISP assigned an IP address" identified in Exhibit A to the motion (and the complaint). The Court granted that motion in part but denied the plaintiff's request to rule in advance on objections to those subpoenas. [1] (ECF No. 4).

On February 10, 2012, a Motion to Quash or Modify the Subpoena was filed by one Doe defendant (identifying him or herself by the e-mail address johndoe07248@yahoo.com), requesting that the Court sever the remaining defendants from the case under Federal Rule of Civil Procedure 21. (ECF No. 5). The plaintiff opposed that motion on February 24, 2012, arguing that the requirements for permissive joinder had been met and that severance would impair its ability to enforce its rights.

On February 28, 2012, another Doe defendant (identified by the email address johndoeedpa1234@yahoo.com), apparently using an IP address serviced by Verizon Internet Services, filed a motion with the Court. (ECF No. 7). That motion seeks severance of the remaining Doe defendants, the quashing of the subpoena served on his ISP, and/or the issuance of a protective order staying all discovery in the case until his or her interests can be heard. The plaintiff opposed that motion on March 13, 2012.

## III. Discussion

The Court finds that the allegations of the complaint make joinder appropriate at this early stage of litigation because the plaintiff asserts a right to relief against all Doe defendants that appears, given the technology involved, to arise out of the same series of transactions or occurrences and because common questions of law or fact seem to be raised with respect to all Doe defendants by virtue of the use of BitTorrent to transmit the same copy of the plaintiff's Work. Further, the Court finds that (a) the information sought in the subpoenas is relevant to the plaintiff's claims; and (b) under the circumstances, the plaintiff's right to pursue its claims of infringement by means of discovering subscriber information outweighs the moving defendant's asserted rights to remain anonymous in connection with the alleged infringing activity. As a result, the Court will deny the moving defendants' motions to quash or modify the subpoenas.

### A. Joinder

*3 "Persons ... may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."Fed.R.Civ.P. 20(a) (2). Where misjoinder occurs, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party."Fed.R.Civ.P. 21.

Although the United States Court of Appeals for the Third Circuit has not directly interpreted Rule 20(a), it has held that events comprising the same transaction or occurrence bear a "logical relationship to one another" and feature "the same factual issues [or] the same factual and legal issues."Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc., 292 F.3d 384, 390 (3d Cir.2002) (interpreting the relationship of compulsory counterclaims under Rule 13, which must arise out of the same transaction or occurrence).

The general policy of the rules regarding joinder is "toward entertaining the broadest possible scope of action consistent with fairness to the parties," and joinder "is strongly encouraged." United Mine Workers v. Gibbs, 383 U.S. 715, 724, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); see also Hagan v. Rogers. 570 F.3d 146, 152 (3d Cir.2009) (quoting Gibbs ). The purpose of Rule 20(a) is "to promote trial convenience" and prevent a multiplicity of lawsuits. However, severance of parties where joinder is not required is committed to the court's discretion if it finds that the objectives of the rule are not fostered, or that joinder could "result in prejudice, expense or delay."7 Charles Alan Wright, et al., Federal Practice & Procedure § 1652 (3d ed.2001).

Here, the plaintiff argues that joinder of the Doe defendants in a single action is appropriate because "the claims against all defendants are logically related and Plaintiff is seeking joint and several liability," and that the defendants, as members of the same BitTorrent swarm, participated in the same series of transactions or occurrences. No defendant has appeared in this matter, as no defendant has been served with the complaint. However, based on the plaintiff's characterizations

**Raw Films, Ltd. v. John Does 1-15, Not Reported in F.Supp.2d (2012)**

2012 WL 1019067

of the nature of the BitTorrent technology and the allegations against each Doe defendant, the Court cannot accept the moving Does' arguments that a finding of misjoinder is appropriate at this stage. As a result, the Court will not sever the proceedings as to each defendant at this stage. The Court may review the propriety of joinder later in the proceedings, once the defendants are served and appear. By that time, a variety of defenses or other arguments as to why joinder is inappropriate, may be raised by the defendants.

The plaintiff alleges that it retained a forensic investigator, who determined that each of the fifteen Doe defendants copied a piece of the same copy of the Work as identified by a particular cryptographic hash value, and that each of the defendants' computers connected to the investigator's server and transmitted at least a piece of the Work. Compl. ¶¶ 35, 37–39. By using BitTorrent to upload or download the same file, the Doe defendants are part of the same "swarm." This is so even though each defendant's activity occurred during different times over a seventy-four day period. Three pairs of Doe defendants are alleged to have participated in the swarm on the same day, although no act of transmittal is alleged to have occurred within fourteen hours of another. Compl. Ex. A.

*4 Based on the plaintiff's allegations regarding the nature of BitTorrent, the pieces of the Work copied by each defendant may have been transmitted by or subsequently sent to other defendants, albeit indirectly, because "recipient peers ... automatically begin delivering the piece they just received to other peers in the same swarm." *Id.* ¶ 33. Even if no Doe defendant directly transmitted a piece of the Work to another Doe defendant, the Court is satisfied that at this stage of the litigation the claims against each Doe defendant appear to arise out of the same series of transactions or occurrences, namely, the transmission of pieces of the same copy of the Work to the same investigative server.

The claims against each defendant are logically related because they will feature largely duplicative proof regarding the nature of BitTorrent, the plaintiff's ownership interest in the copyright for the Work, and the forensic investigation conducted by the plaintiff. These common questions of fact are likely to arise along with the legal standards for direct and contributory copyright infringement liability. The joining of the fifteen defendants that have these elements in common will, at this point, prevent a multiplicity of lawsuits. Thus, the requirements of Rule 20(a)(2) are met, and its purposes furthered.

Additionally, at this stage of litigation, joinder will not result in prejudice to any defendant or result in needless delay. Indeed, severance of the action as requested by the two moving Doe defendants would require the filing of separate actions and the issuance of new subpoenas on the internet service providers serving the IP addresses in this case in order to identify each defendant. Neither of these steps would "secure the just, speedy, and inexpensive determination" of the action. Fed.R.Civ.P. 1. No defendant will be prejudiced by joinder at this stage, as none has been served in the matter or required to respond to the complaint. Instead, the defendants may benefit from joinder by permitting them to obtain the same discovery from the plaintiff or allowing them to see any defenses raised by other Doe defendants. *See Call of the Wild Movie, LLC v. Does 1–1062,* 770 F.Supp.2d 332, 344 (D.D.C.2011) (citing *London–Sire Records, Inc. v. Doe 1,* 542 F.Supp.2d 153, 161 (D.Mass.2008)). The defendants may challenge the appropriateness of joinder later in the proceedings.

Courts faced with allegations of copyright infringement brought against multiple unnamed defendants based on the use of BitTorrent have split on whether joinder is appropriate. *Compare Hard Drive Prods., Inc. v. Does 1–55,* No. 11–2798, 2011 WL 4889094, at *5 (N.D.Ill. Oct.12, 2011) (joinder appropriate); *Donkeyball Movie, LLC v. Does 1–171,* 810 F.Supp.2d 20, 27–28 (D.D.C.2011) (same) *with Hard Drive Prods. Inc. v. Does 1–30,* No. 11–345, 2011 WL 4915551, at *4 (E.D.Va. Oct.17, 2011) (joinder inappropriate); *Hard Drive Prods., Inc. v. Does 1–188,* 809 F.Supp.2d 1150, 1156–64 (N.D.Cal.2011) (same).

*5 Courts that have permitted joinder appear to have taken the same approach as this Court by finding it appropriate as an initial matter and permitting any defendant, once named and served, to challenge the appropriateness of joinder later in the case. *See, e.g., K–Beech Inc. v. Does 1–57,* No. 11–358, 2011 WL 5597303 (M.D.Fla. Nov.1, 2011); *Call of the Wild,* 770 F.Supp.2d at 344; *Donkeyball Movie,* 810 F.Supp.2d at 28. This is consistent with the Rules, which grant the district court power to drop parties and sever claims "at any time, on just terms." Fed.R.Civ.P. 21.

Other courts have found severance appropriate where a plaintiff made similar allegations to those in this case. *See, e.g., On the Cheap, LLC v. Does 1–5011,* No. 10–4472, 2011 WL 4018258, at *2–*3 (N.D.Cal. Sept.6, 2011). *On the Cheap* had numerous factual characteristics that distinguish it from

**Raw Films, Ltd. v. John Does 1-15, Not Reported in F.Supp.2d (2012)**

2012 WL 1019067

the present case. [2] In addition to featuring over five thousand Doe defendants, which created a "logistical nightmare," many were located out of the district and several defendants had already appeared and raised a variety of defenses. Here, no defendant has appeared or even been identified pursuant to the subpoenas served on the defendants' ISPs.

One moving defendant suggests that the variety of defenses that could be raised by the Doe defendants renders joinder inappropriate because it will not foster judicial economy or promote the efficient resolution of the claims in this case. Def. Mot. 5 (ECF No. 5) (citing *BMG Music v. Does 1-203*, No. 04-650, 2004 WL 953888, at *1 (E.D.Pa. Apr.2, 2004)). However, no defenses have been raised to date in this case, and indeed, consolidating early discovery for the purpose of determining the scope of claims and defenses will foster judicial economy. Should that process reveal disparate defenses as to each party, the Court would consider such a fact relevant on a later review of joinder's propriety.

The Rules grant the Court authority to revisit the issue of misjoinder at a later point in the case, either by motion or *sua sponte.* With this procedural protection in mind, the Court will deny the motions to sever the defendants without prejudice to their ability to raise the issue of misjoinder at a later time.

**B. *Motions to Quash***

One moving defendant also requests that the subpoenas served on the ISPs in this case be quashed, challenging the relevance of the information sought by the subpoena and claiming a First Amendment interest in remaining anonymous. The Court will deny this request.

The moving Doe objects to the subpoena served on his or her ISP because (a) it may not directly identify the infringing party but instead an innocent third party, and thus falls outside the scope of permissible discovery; and (b) he or she claims a privacy interest in the records sought. Def. Mot. 14-17. A court must quash a subpoena under certain circumstances, including when it subjects a person to undue burden. A court may quash or modify a subpoena if it requires disclosure of "a trade secret or other confidential research, development, or commercial information" or requires a nonparty to "incur substantial expense." It may modify a subpoena if the serving party "shows a substantial need for the testimony or material that cannot otherwise be met without undue hardship." Fed.R.Civ.P. 45(c)(3). Neither of the moving Doe's

arguments raises valid grounds for quashing the subpoena served on Verizon.

**\*6** Proceeding with discovery to obtain the identity of Doe defendants so that they may be served is proper and within the scope of permissible discovery. The plaintiff moved for leave to serve discovery prior to a Rule 26(f) conference in order to do so. Pl.'s Mot. 4 (ECF No. 3). Discovery for the purpose of identifying Doe defendants is permissible. *See, e.g., Blakeslee v. Clinton County*, 336 F. App'x 248, 250 (3d Cir.2009). The Court found good cause for ordering that discovery, *see* Fed.R.Civ.P. 26(b)(1), because the plaintiff showed that a subpoena seeking the subscriber information associated with the allegedly infringing IP addresses would be the only way for the plaintiff to identify the proper defendants in this case and proceed with its claims against them. [3] *See* Declaration of Tobias Fieser ¶ 9, 23, Pl.'s Mot. Ex. The information sought is thus highly relevant to the plaintiff's claims.

The moving Doe also argues that the subpoena must be quashed because disclosure of his or her identity is violative of a First Amendment right to engage in anonymous online communication. Def. Mot. 17. The Constitution protects the right to engage in anonymous communication, and that protection extends to the Internet. *See Reno v. ACLU*, 521 U.S. 844, 870, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997). The First Amendment is implicated by civil subpoenas seeking the identify of anonymous individuals. *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). However, anonymous speech is not entitled to absolute protection, particularly if the speech consists of copyright infringement. *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 555-56, 569, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985); *see also In re Capital Cities/ABC, Inc.*, 918 F.2d 140, 143-44 (11th Cir.1990) ("[T]he first amendment is not a license to trammel on legally recognized rights in intellectual property.") (quoting *Dallas Cowboys Cheerleaders, Inc. v. Scoreboard Posters, Inc.*, 600 F.2d 1184, 1188 (5th Cir.1979)).

The U.S. Court of Appeals for the Third Circuit has not articulated a standard for balancing the need for discovery against the right to anonymous speech. Courts around the country have applied standards that vary according to the nature of the protected speech and the showing required to overcome that protection. *See In re Anonymous Online Speakers*, 661 F.3d 1168, 1174-76 (9th Cir.2011) (noting that courts have required showings ranging from a "good

**Raw Films, Ltd. v. John Does 1-15, Not Reported in F.Supp.2d (2012)**

2012 WL 1019067

faith standard" to one demonstrating the plaintiff's ability "to survive a hypothetical motion for summary judgment"). [4]

The Second Circuit is the only federal appellate court to have adopted a test balancing the right to obtain relevant discovery to pursue a claim of copyright infringement against the constitutional privilege to engage in anonymous speech online. *See Arista Records, LLC v. Doe 3,* 604 F.3d 110, 114 (2d Cir.2010).[5] The Second Circuit's test is derived from a 2004 district court opinion that laid out a five-factor test for balancing intellectual property rights against First Amendment anonymity interests. *See Sony Music Entertainment Inc. v. Does 1–40,* 326 F.Supp.2d 556, 564–67 (S.D.N.Y.2004) (adopting the test after a review of the considerations that had been applied by district courts to date).[6]

**\*7** In *Sony Music,* the court, faced with alleged infringement of musical copyrights, evaluated a Doe defendant's motion to quash a subpoena served on the defendant's ISP that sought to uncover her identity so that she could be served with process. Among other grounds, the Doe defendant argued that the First Amendment protected her right to engage in online file-sharing anonymously. The court recognized the protection afforded to the potentially expressive practice of file-sharing (by choosing a collection files to upload and download). The court also acknowledged the limited protection the Constitution affords to speech constituting copyright infringement and the need for that protection to give way when a civil subpoena, issued in connection with claim of copyright infringement, seeks information necessary to advance that claim. *Id.* at 562.

The test set forth by the *Sony Music* court analyzes the following five factors to determine whether the need for disclosure outweighs the right to anonymity where the speech alleged is copyright infringement: (1) a prima facie claim of infringement; (2) the specificity of the information sought from the ISP; (3) a lack of alternative means of obtaining that information; (4) a "central need" for the information in order to bring the claim; and (5) the expectation of privacy held by the objecting party. *Id.* at 564–65.Finding that the information sought by the plaintiff's subpoena was necessary to advance its claim, the court denied the motion to quash. *Id.* at 567.

The Court concludes that such a test strikes the appropriate balance between the limited protection afforded to speech that constitutes copyright infringement and the need for the plaintiff to serve a defendant with process in order to advance

non-frivolous claims of infringement. As discussed above, the third and fourth factors of the *Sony Music* test weigh against quashing the subpoena because the plaintiff has shown that obtaining the subscriber information possessed by the ISPs is the only reasonable means of discovering the identity of the subscribers whose IP addresses were used to commit the alleged infringement here.

Additionally, the complaint makes a prima facie claim of copyright infringement, which requires "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). The plaintiff has alleged that it owns the copyright in "Bareback Street Gang" and that the defendants, through use of BitTorrent, connected to the plaintiff's investigative server and copied elements of the Work. The first *Sony Music* factor thus weighs against quashing the subpoena.

The subpoena is specific enough to give rise to a reasonable likelihood that information facilitating service upon proper defendants will be disclosed if the ISPs comply. The subpoena here seeks the name, address, telephone number, e-mail address and "Media Access Control" address (which identifies the specific equipment using the IP address) of the subscriber to whom the served ISP assigned the specific IP addresses at the dates and times of the alleged infringement identified in Exhibit A to the complaint. Again, although the provision of this information may not directly identify the proper defendants, it is sufficiently tailored to lead to the identification of those individuals. Thus, the second *Sony Music* factor weighs against quashing the subpoena.

**\*8** Finally, courts analyzing the expectation of privacy possessed by internet users engaging in online file-sharing have concluded that such expectation is at most minimal because those individuals have already voluntarily given up certain information by engaging in that behavior. A Doe defendant who has allegedly used the internet to unlawfully download and disseminate copyrighted material does not have a significant expectation of privacy. *Accord In re Verizon Internet Servs., Inc.,* 257 F.Supp.2d 244, 267 (D.D.C.2003) (engaging in peer-to-peer file-sharing is akin to "essentially opening up the computer to the world"). Even if the moving Does retained a reasonable expectation of privacy in their subscriber information, that interest is substantially outweighed by the need to disclose it so that the plaintiff may proceed with bringing what appear to be non-frivolous claims of copyright infringement that cannot be advanced by

**Raw Films, Ltd. v. John Does 1-15, Not Reported in F.Supp.2d (2012)**

2012 WL 1019067

other means. Thus, the Court will deny the motions to quash the subpoena. This denial is without prejudice to the right of any served ISP or other Doe defendant to raise a timely objection to a subpoena served pursuant to the Court's order of December 28, 2011.

Finally, the second moving Doe defendant asks the Court to enter a protective order that will stay discovery in this case "until such time as [his or her] interests ... can be heard and considered," Mot. 25, but the Court does not understand the basis for this request. The Rules permit the Court to enter a protective order "for good cause," in order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."Fed.R.Civ.P. 26(c)(1). The moving defendant has not put forth the basis for the entry of such a protective order. To the extent that Doe has argued that his or her interests have not yet been heard as to the appropriateness of the subpoena, those arguments have been addressed above in the discussion of the motion to quash.

Otherwise, a party may not proceed to litigate in federal court anonymously except in rare circumstances. Fed.R.Civ.P. 10(a); see also Doe v. Megless, 654 F.3d 404, 408 (3d Cir.2011) (finding that "exceptional cases" may merit permitting a party to proceed anonymously upon a showing of a reasonable fear of severe harm). The second moving Doe has not alleged that he or she fears "severe harm" resulting from the requirement to appear if he or she wishes to defend against the claims the plaintiff has brought. The Court will not enter a protective order at this time.

An appropriate order shall issue.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 1019067

**Footnotes**

1   The subpoena authorized by the Court directs ISPs that are "cable operators" as defined by federal statute to notify its subscribers of the subpoena. Pl.'s Proposed Order ¶ 4 (ECF No. 3) (citing 47 U.S.C. § 551(c)(2)(B)).

2   Similarly, many of the other district court opinions cited in support of the defendants' requests for severance are based on old technology, see LaFace Records, LLC v. Does 1–38, No. 07–298, 2008 WL 544992 (E.D.N.C. Feb.27, 2008); alleged violations of multiple copyrighted works rather than a single work, see BMG Music v. Does 1–203 No. 04–650, 2004 WL 953888, at *1 (E.D.Pa. Apr.2, 2004)); or involved defendants that had seemingly been joined "arbitrarily," see Twentieth Century Fox Film Corp. v. Does 1–12, No. 04–4862, 2004 WL 3241669, at *1 (N.D.Cal. Nov.16, 2004). Indeed, district courts ruling on the propriety of "swarm joinder" have found the specificity of the factual allegations brought to weigh heavily on the outcome of the Rule 20(a) analysis. See, e.g., Patrick Collins, Inc. v. Does 1–2590, No. 11–2766, 2011 WL 4407172, at *5 (N.D.Cal. Sept.22, 2011) (collecting cases and finding results "highly dependent on the information the plaintiff presented").

3   The Court acknowledges that Verizon's compliance with the subpoena may not directly reveal the identity of an infringer. Indeed, the subscriber information Verizon discloses will only reveal the account holder's information, and it may be that a third party used that subscriber's IP address to commit the infringement alleged in this case. See, e.g., BMG Music v. Does 1–203, No. 04–650, 2004 WL 953888, at *1 (E.D.Pa. Apr.2, 2004) (acknowledging this limitation on ISP-level subpoenas). Moreover, the Rules permit parties to obtain discovery of "the identity and location of persons who know of any discoverable matter."Fed.R.Civ.P. 26(b)(1). One moving Doe argues that the individual whose identity is revealed by the subpoena may not be the infringer because of "numerous issues, from open wireless networks being illegally invaded, IP address spoofing[, and] human and collection errors."Mot. 21. These are not grounds on which to quash a subpoena otherwise demonstrated to be proper. The moving Doe may raise these and any other nonfrivolous defenses in the course of litigating the case.

4   The most exacting standard appears to have been applied by the Delaware Supreme Court in the context of a defamation case. See Doe v. Cahill, 884 A.2d 451 (Del.2005). The court required the plaintiff to "submit sufficient evidence to establish a prima facie case for each essential element" of the claim of defamation before the court would permit discovery of the alleged defamer's identity. Id. at 467.The Court finds application of such a standard inappropriate in the present context because Cahill involved a different type of claim and, more importantly, a different kind of speech. The plaintiff in Cahill was a city councilman whose performance in office had been criticized on an Internet blog. Thus Cahill presented concerns over chilling political speech, which is entitled to the highest level of protection under the First Amendment. See

**Raw Films, Ltd. v. John Does 1-15, Not Reported in F.Supp.2d (2012)**

2012 WL 1019067

        *McIntyre v. Ohio Elections Comm'n,* 514 U.S. 334, 342, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995) (describing the lengthy history of courts safeguarding the right to publish political speech anonymously).

5      As the Ninth Circuit noted, "the paucity of appellate precedent is not surprising because discovery disputes are not generally appealable on an interlocutory basis and mandamus review is very limited."*In re Anonymous Online Speakers,* 661 F.3d at 1175.

6      The test has since been applied by district courts sitting in the D.C., First, Third, Fourth, Sixth, Seventh, Ninth, and Tenth Circuits. *See Art of Living Foundation v. Does,* No. 10–5022, 2011 WL 3501830, at *3 (N.D.Cal. Aug.10, 2011); *First Time Videos, LLC v. Does 1–500,* 276 F.R.D. 241, 248–49 (N.D.Ill.2011); Call of the Wild, 770 F.Supp.2d at 341; *Warner Bros. Records, Inc. v. Doe,* No. 08–116, 2008 WL 5111884, at *7 (E.D.N.C. Sept.26, 2008); *Fonovisa, Inc. v. Does 1–9,* No. 07–1515, 2008 WL 919701, at *9 (W.D.Pa. Apr.3, 2008); *Interscope Records v. Does 1–14,* 558 F.Supp.2d 1176, 1178 (D.Kan.2008); *London–Sire Records, Inc. v. Doe 1,* 542 F.Supp.2d 153, 163 (D.Mass.2008); *LaFace Records, LLC v. Does 1–5,* No. 07–187, 2007 WL 2867351, at *2 (W.D.Mich. Sept.27, 2007).

---

**End of Document**                 © 2015 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT 2

2013 WL 4501443
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois,
Eastern Division.

MALIBU MEDIA, LLC, Plaintiff,
v.
JOHN DOES 1–49, Defendants.

No. 12–cv–6676. | Aug. 22, 2013.

**Attorneys and Law Firms**

Paul Joseph Nicoletti, Nicoletti & Associates, PLLC, Bloomfield Hills, MI, Mary K. Schulz, Schulz Law, P.C., Geneva, IL, for Plaintiff.

Alan L. Garrow, Nealis & Garrow, Batavia, IL, for Defendants.

**MEMORANDUM OPINION AND ORDER**

ROBERT M. DOW, JR., District Judge.

*\*1* In its complaint, Plaintiff Malibu Media alleges copyright infringement and contributory copyright infringement in violation of 17 U.S.C. §§ 106 and 501 against Doe Defendants 1–49. Soon after Plaintiff filed its complaint, it sought leave to serve third party subpoenas on Comcast prior to the Rule 26(f) conference. The Court granted Plaintiff's motion. Since then, Plaintiff has voluntarily dismissed its claims against all Defendants other than Does 1, 29, 34, and 35. Before the Court are the remaining Defendants' motions to quash the subpoenas, dismiss or sever for misjoinder, to dismiss for failure to make a prima facie showing of copyright infringement, and, if those motions are denied, Doe Defendant 1 asks the Court to limit the scope of the subpoena and for a protective order preventing the disclosure of any information obtained though the subpoenas [12, 14, 16, 20]. For the reasons stated below, the motions to quash, sever, dismiss, and to limit the scope of the subpoenas are denied [12, 14, 16, 20], except that Doe Defendant 1's motion for a protective order is granted.

**I. Background**
Plaintiff claims that it is the owner of the copyright for a film called Young & Hot and that Defendants used computer software called BitTorrent to illegally copy and distribute its film. In an opinion issued last month, Judge Tharp provided a succinct description of how BitTorrent works:

> BitTorrent is a software protocol that facilitates the practice of peer-to-peer file sharing used to distribute large amounts of data over the internet. To share information using BitTorrent, an initial file-provider (the "seeder") elects to share an initial file, called a "seed," with a torrent network. The file to be distributed is divided into segments called "pieces." Other users ("peers") intentionally connect to the seed file to download it. As each peer receives a new piece of the file, the peer also immediately becomes a source of that piece for other peers, relieving the original seeder from having to send that piece to every peer requesting a copy. This is the key difference between BitTorrent and earlier peer-to-peer file sharing systems: "BitTorrent makes file sharing a cooperative endeavor." Sean B. Karunaratne, *The Case Against Combating BitTorrent Piracy through Mass John Doe Copyright Infringement Lawsuits*, 111 Mich. L.Rev. 283, 290 (2012) (hereinafter, *The Case Against Mass Joinder* ). It is "architecturally impossible for any peer on the network to take without giving." *Id.* at 288.

> After a peer completely downloads the file, it continues to transmit pieces of the file to other users until it disconnects from BitTorrent. As additional peers request and receive pieces of the same file, each user becomes a part of the network from which the file can be downloaded. As more users join the network, the speed and efficiency of downloads increases. The group of seeders and peers uploading and downloading the identical file are called a "swarm." While connected to the swarm, users continuously download pieces of the file until they have obtained a complete file and continuously upload pieces of the file to other users in the swarm. Even after a user exits the swarm, the identical file pieces that the user downloaded from other users and then shared with peers continue to circulate throughout the swarm. BitTorrent swarms can survive continuously for months or even years.

> *\*2 TCYK, LLC v. Does 1–87*, 2013 WL 3465186, at *\*1 (N.D.Ill. July 10, 2013).

Here, Plaintiff alleges that Defendants were part of the same swarm, downloading and uploading the film at various times between June 6 and July 25, 2012. Plaintiff's allegations are based on the fact that its investigator was able to download a piece of an identical copy of Young & Hot from each Defendant's IP address. Because of the way BitTorrent works,

each Defendant (or someone using that address) must have had part of the film on his or her computer and allowed others to download it. The investigator was also able to ascertain— and Defendants do not deny—that Defendants are located in this judicial district and used Comcast as the internet service provider.

## II. Discussion

### A. Motions to Quash

All Defendants have moved to quash the subpoenas Plaintiff has served on Comcast. As of now, Defendants are known to Plaintiff only by their IP addresses and general locations. The subpoenas request Defendants' name, address, telephone number, email address, and the Media Access Control ("MAC") address (used to identify the specific computer used to download and upload the film).

Defendants argue first that the subpoenas should be quashed because they subject the Defendants to an undue burden. See Fed.R.Civ.P. 45(c)(3)(A)(iv). The claimed undue burden is that Defendants will suffer a reputational injury if they are identified as the alleged infringer. The problem with this argument is that the undue burden referred to by Rule 45 is the burden on the subpoenaed party, in this case Comcast. See *Malibu Media, LLC v. John Does 1–6*, 2013 WL 2150679, at *4 (N.D.Ill. May 17, 2013) (citing cases involving subpoenas of internet service providers). Accordingly, the subpoenas will not be quashed as imposing an undue burden on Defendants.

Defendants also argue that the subpoenas should be quashed because the burden of the proposed discovery outweighs its likely benefit. Fed.R.Civ.P. 26(b)(2)(C)(iii). Defendants believe the likely benefit is small because the subpoenas will only reveal the Comcast *subscriber's* identity and that is not necessarily the alleged infringer. The infringer could be, for example, a houseguest or a neighbor stealing the subscriber's Wi-Fi through a wall. Comcast, therefore, cannot tell Plaintiff who actually used the IP address to enjoy Young & Hot. And the burden is high, Defendants argue, because the subscriber is going to be outed as a person who may have enjoyed such a film—causing or threatening significant reputational injury. In fact, Defendants believe that threating reputational injury is the very point of this lawsuit. They maintain that the sole object of this lawsuit is to leverage the shame of downloading films like Young & Hot in order to force a quick settlement.

The Court understands that Defendants are in an undesirable spot, and their assessment of Plaintiff's motivation may be more or less correct, but that does not mean that the burden of Plaintiff's proposed discovery outweighs its benefit. The "burden" that Defendants have identified is simply the burden of being accused of stealing pornography. It is not a wild assumption on Plaintiff's part that the subscriber may be the alleged infringer or may lead to the alleged infringer. Without connecting the IP address to a person, Plaintiff would have no way of prosecuting infringement of its claimed copyright. The Court will not prohibit this discovery because it is less than certain to identify the individual who Plaintiff really wants to find. See also *Malibu Media, LLC,* 2013 WL 2150679, at *5 (describing the subpoena to discover the subscriber as a "useful starting point for identifying the actual infringer" and refusing quash the subpoena based on a defendant's general denial of liability). And the Court will not prohibit Plaintiff's requested discovery because it will allow Plaintiff to make reasonable, albeit somewhat embarrassing, claims against each Defendant. Defendants' motions to quash are denied.

*3 Finally, Doe Defendant 29 asks the Court to modify the subpoena to require Comcast to provide Plaintiff with only the subscriber's name and address, and not their phone number, email, and MAC address. Defendant's concern is that the additional information is not required to effectuate service and that it will be used to harass him or her with settlement demands. The Court will not modify the subpoena for two reasons. First, basic information about Defendant will be produced in the ordinary course of discovery. It would serve little purpose to deny today what Plaintiff would be entitled to tomorrow. Second, Plaintiff is aware that it cannot use Defendant's personal information to coerce Defendant into a settlement. If Defendant's fears of harassment are founded, the Court will hear Defendant's complaint and take appropriate action.

### B. Motions to Sever for Improper Joinder

Federal Rule of Civil Procedure 20(a)(2) permits defendants to be joined in a single action if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."Beyond these two requirements, consideration is given as to whether joinder would result in prejudice against any parties or otherwise cause delay.*First Time Videos, LLC v. Does 1–500,* 276 F.R.D. 241, 252, (N.D.Ill.2011). If parties have been improperly joined as

defendants, the court may sever the claims pursuant to Rule 21. Rule 21 provides, "On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party."The district court has "broad discretion whether to sever a claim under Rule 21."*Rice v. Sunrise Express, Inc.,* 209 F.3d 1008, 1016 (7th Cir.2000). Claims may be severed, and the severance may create two separate proceedings, provided that the claims are "discrete and separate." *Gaffney v. Riverboat Services of Indiana, Inc.,* 451 F.3d 424, 442 (7th Cir.2006) (quoting *Rice,* 209 F.3d at 1016).

Defendants' arguments that the claims against them should be severed boil down to this: (1) Defendants contributed to the same swarm but they did so weeks apart, so Plaintiff cannot claim that they acted "in concert," and therefore joinder is inappropriate, and (2) Defendants believe that they would be prejudiced by the variety of defense arguments that each Defendant would likely present at trial.

The first point is repeated throughout the Defendants' briefs and is a theme sounded by those skeptical of BitTorrent suits like this one. See, *e.g., The Case Against Mass Joinder* (arguing that direct collaboration should be required for joinder). The problem with the argument is that Rule 20 does not require direct transactions or collaboration. In fact, Rule 20 expressly allows for joinder based on a "series of transactions or occurrences." The Court has little doubt that participation in a swarm during a relatively limited time-period of satisfies that rule. Other district courts agree. See, *e.g., TCYK, LLC,* 2013 WL 3465186, at *3 (citing cases from D. Mass, E.D. Mich, and E.D. Tex); *Malibu Media, LLC,* 2013 WL 2150679, at *8 ("[I]t is difficult to see how the sharing and downloading activity alleged in the Complaint— a series of individuals connecting either directly or with each other as part of a chain or 'swarm' of connectivity designed to illegally copy and share the exact same copyrighted file— could *not* constitute a 'series of transactions or occurrences' for the purposes of Rule 20(a).") (quoting *Digital Sin, Inc. v. Does 1–176,* 279 F.R.D. 239, 244 (S.D.N.Y.2012)). Defendants are alleged to have downloaded identical copies of a single film and to have shared that same film with others doing the same thing, embodying and sustaining the swarm, all during a limited period of time. That is a *series* of transactions or occurrences; to conclude otherwise ignores the word "series," and would improperly restrict Rule 20(a) (2)(A) to the same transaction or occurrence.

**\*4** Next Defendants argue that they would be prejudiced by the variety of defense arguments that each Defendant would likely present at trial. There are two responses to this concern. First, Rule 20(a)(2)(B) requires common questions of fact or law, but it does not require that all questions of fact or law be shared. See, *e.g., Sunlust Pictures, LLC v. Does 1–75,* 2012 WL 3717768, at *4 (N.D.Ill. Aug.27, 2012). Here, Defendants use the same internet service provider, live in the same judicial district, and are accused of using the same technology to illegally download and share the same movie. So, plainly, there are common questions of fact or law. Second, this case is at the pleading stage, but if as the case progresses and factual and legal differences emerge that make joinder inappropriate, the Court can reconsider its ruling.Fed.R.Civ.P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party."); *First Time Videos, LLC v. Does 1–500,* 276 F.R.D. 241 (N.D.Ill.2011) ("The Court recognizes that each Doe Defendant may later present different factual circumstances to support individual legal defenses. Prospective factual distinctions, however, will not defeat the commonality in facts and legal claims that support joinder under Rule 20(a)(2)(B) at this [early] stage in the litigation."). Accordingly, the motions to sever for improper joinder are denied.

**C. Doe Defendant 1's Motion to Dismiss**

According to a table attached to Plaintiff's complaint, Doe Defendant 1 is alleged to have infringed Plaintiff's copyright for Young & Hot on June 6, 2012. Plaintiff did not register the film with the United States Copyright office until June 8, 2012. Doe Defendant 1 argues that because the film was not registered at the time of the alleged infringement, he or she cannot be liable for statutory damages or attorney's fees. As authority for this proposition, Doe Defendant 1 cites 17 U.S.C. § 412, which states:

> In any action under this title, other than an action brought for a violation of the rights of the author under section 106A(a), an action for infringement of the copyright of a work that has been preregistered under section 408(f) before the commencement of the infringement and that has an effective date of registration not later than the earlier of 3 months after the first publication of the work or 1 month after the copyright owner has learned of the infringement, or an action instituted under section 411(c), no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for—

**Malibu Media, LLC v. John Does 1-49, Slip Copy (2013)**

2013 WL 4501443

(1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or

(2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

*5 Plaintiff responds that its work was first published in June of 2012 and that it was registered the same month. See [1–2]. The provision cited by Doe Defendant 1 provides for a three-month grace period: so long as the work is registered within three months of publication, the copyright holder may recover statutory damages and fees. See, *e.g.*, *Hays v. Sony Corp. of Am.*, 847 F.2d 412, 415 (7th Cir.1988) ("The plaintiffs could not obtain statutory damages or attorney's fees, because they did not register their copyright within three months after first publishing the [work] * * *."); *Television Digest, Inc. v. U.S. Tel. Ass'n*, 841 F.Supp. 5, 11 (D.D.C.1993) ("Statutory damages are available for all infringements of copyrights registered within three months after the first publication of the work.") *Singh v. Famous Overseas, Inc.*, 680 F.Supp. 533, 536 (E.D.N.Y.1988) ("[17 U.S.C. § 412(2) ] provides a grace period of three months after publication during which registration can be made without loss of remedies: full remedies could be recovered for any infringement begun during the three months after publication if registration is made before that period has ended. This exception is needed to take care of newsworthy or suddenly popular works which may be infringed almost as soon as they are published, before the copyright owner has had a reasonable opportunity to register his claim.") (quoting H.R.Rep. No. 94–1476). Because Plaintiff has alleged that its work was registered within the grace period provided by 17 U.S.C. § 412, Doe Defendant 1's motion to dismiss is denied.

**D. Motion for a Protective Order**
In the event that the Court denied Doe Defendant 1's motions to quash or dismiss, he or she also moved for a protective order requiring that any information released by Comcast remain confidential. Plaintiff does not oppose the motion and agrees to allow Doe Defendant 1 to proceed anonymously through the end of discovery. Considering the sensitive subject matter, the Court agrees that such a protective order is appropriate and so the motion is granted: Doe Defendant 1 may proceed anonymously at least through the end of discovery. The Court believes that the same order would be appropriate for the other remaining Defendants. The parties should confer as to whether they can agree to such an order and, if not, the remaining Defendants may move for the entry of one under Rule 26(c), see *Hard Drive Productions v. Does 1–48*, 2012 WL 2196038, at *6 (N.D.Ill. June 14, 2012).

**III. Conclusion**
Defendants' motions [12, 14, 16, and 20] are denied except for Doe Defendant 1's motion for a protective order, which is granted.

**All Citations**

Slip Copy, 2013 WL 4501443

---

**End of Document**       📖 2015 Thomson Reuters  No claim to original U.S. Government Works.

# EXHIBIT 3

2014 WL 1228383
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois, Eastern Division.

Malibu Media, LLC, Plaintiff,
v.
John Doe subscriber assigned IP
address 98.228.213.184, Defendant.

No. 13 C 8484  |  Signed March 24, 2014

**Attorneys and Law Firms**

Mary K. Schulz, Schulz Law, P.C., Geneva, IL, for Plaintiff.

Jonathan Lucas Allen Phillips, Shay Kepple Phillips, Ltd., Peoria, IL, for Defendant.

## OPINION AND ORDER

SARA L. ELLIS, United States District Judge

**\*1** This case is one of many copyright infringement actions brought by Malibu Media, LLC ("Malibu Media"), a creator and distributor of adult films, alleging that individuals have used BitTorrent to infringe its copyrights. After filing the complaint, Malibu Media sought leave to serve a third party subpoena on defendant John Doe's internet service provider ("ISP"), Comcast Cable ("Comcast"), prior to holding a Rule 26(f) conference. Doc. 5. The Court granted the motion on December 17, 2013. Doc. 9. Doe now seeks to vacate the Court's order granting early discovery, to quash the subpoena, and to have the Court order Malibu Media to show cause why it and its counsel should not be sanctioned for their conduct in seeking early discovery. Because the Court does not find its prior order to have been improper or that Doe has raised a valid basis to quash the subpoena, the Court denies Doe's motion [12].

## BACKGROUND

In its complaint, Malibu Media alleges that between December 2012 and November 2013 Doe used BitTorrent, a software protocol that allows users to distribute data, including movie files, through peer-to-peer networks, to download, copy, and distribute forty-five of Malibu Media's copyrighted movies without authorization. Malibu Media alleges that it discovered this by using an investigator, IPP International UG ("IPP"), to establish a direct TCP/IP connection with Doe's IP address and then download bits of each of these forty-five movies. IPP then verified that these downloads corresponded with Malibu Media's copyrighted works.

The complaint only identifies Doe by an IP address, which Malibu Media has been able to trace to a physical address in the Northern District of Illinois. In order to determine Doe's identity and serve Doe with the complaint, Malibu Media sought leave to serve a third party subpoena on Comcast, Doe's ISP, prior to holding a Rule 26(f) conference. That subpoena, which was for the limited purpose of prosecuting this case, sought to discover Doe's name, address, telephone number, and email address. Malibu Media's motion was accompanied by a supporting memorandum and several declarations. One of those declarations was from Tobias Fieser, an IPP employee, who stated that computer(s) using Doe's IP address transmitted the movies identified in the complaint. The Court granted Malibu Media's motion to take discovery prior to the Rule 26(f) conference. Doe subsequently filed an appearance, asking the Court to vacate its order and moving to quash the subpoena issued to Comcast.

## ANALYSIS

### I. Motion to Vacate and Quash

The Court may quash a subpoena if it "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed.R.Civ.P. 45(d)(3)(A). The party moving to quash bears the burden of meeting the requirements of Rule 45. See Pacific Century Int'l, Ltd. v. Does 1–7, 282 F.R.D. 189, 193 (N.D.Ill.2012) (citing Williams v. Blagojevich, No. 05 C 4673, 2008 WL 68680, at \*4 (N.D.Ill. Jan. 2, 2008)). Whether to quash a subpoena is within the Court's sound discretion. United States v. Ashman, 979 F.2d 469, 495 (7th Cir.1992).

**\*2** Although neither party raises the issue, as an initial matter, the Court notes that it is questionable whether Doe has standing to object to the subpoena served on Comcast. To have standing to quash the subpoena, the information sought must be privileged or the subpoena must implicate Doe's

2014 WL 1228383

"legitimate interests." *Malibu Media, LLC v. John Does 1–21*, No. 12 C 9656, 2013 WL 2458290, at *2 (N.D. Ill. June 6, 2013). The Seventh Circuit has not yet addressed the issue of whether a Doe defendant in a BitTorrent case has standing to challenge a subpoena issued to his or her ISP, and the district courts in this Circuit are split. *Compare TCYK, LLC v. Does 1–87*, No. 13 C 3845, 2013 WL 5567772, at *2 (N.D.Ill. Oct. 9, 2013) (defendants have "at least a minimal privacy interest" in the requested information); *Sunlust Pictures, LLC v. Does 1–75*, No. 12 C 1546, 2012 WL 3717768, at *2 (N.D.Ill. Aug. 27, 2012) (Doe had standing based on "privacy interest in the information requested"), *with Hard Drive Prods. v. Does 1–48*, No. 11 CV 9062, 2012 WL 2196038, at *4 (N.D. Ill. June 24, 2012) (Doe defendants did not have standing "because internet subscribers must convey their identity and other information to an ISP in order to establish an account" and thus "do not have a reasonable expectation of privacy in their subscriber information").

The Court need not decide whether Doe has standing, however, because Doe has not demonstrated that the subpoena should be quashed. Essentially, Doe argues that the subpoena should be quashed because Malibu Media did not present all relevant facts to the Court when requesting its issuance. Specifically, Doe contends that Malibu Media should have notified the Court of the following: (1) that its investigator, IPP, was being compensated pursuant to a contingency fee arrangement and is not a licensed private detective in Illinois; (2) that IPP is hiding its actual name and connection with another company, Guardaley, from the Court, Doe, and other defendants Malibu Media has sued; (3) that Fieser does not actually monitor the BitTorrent network as represented in his declaration and that instead a different individual, Michael Patzer, performs that task; and (4) whether Malibu Media had a *prima facie* case of copyright infringement. Taking the last argument first, Malibu Media specifically set forth in its memorandum in support of its motion for leave to serve the third party subpoena that it has a *prima facie* claim for copyright infringement. *See* Doc. 6 at 5–6. And although Doe argues that Malibu Media should have informed the Court of how much of each file Doe had downloaded or shared, the specificity Doe requests is not required at the pleading stage. *See Malibu Media, LLC v. Doe*, No. 13–C–0213, 2013 WL 5876192, at *2 (E.D.Wis. Oct. 31, 2013) (denying motion to quash subpoena because it was plausible at pleading stage that "a user who has a piece of a file constituting a movie on his computer also has the remaining pieces"). If Doe is contesting whether he actually downloaded entire files, such arguments go to the merits of the action

and are "not relevant as to the validity or enforceability of a subpoena, but rather should be presented and contested once parties are brought properly into the suit." *First Time Videos, LLC v. Does 1–500*, 276 F.R.D. 241, 251 (N.D.Ill.2011).

Doe's other three arguments relate to what Doe considers to be illegality and obfuscation surrounding Malibu Media's investigative methods. Doe maintains that because of these problems, the Court should not have considered Fieser's declaration. In response to Doe's motion, Malibu Media provides declarations that IPP is paid only for data collection services, that IPP has not been compensated for any work related to this specific case, and that Malibu Media has never paid nor offered to pay Fieser anything for his testimony. But even if Fieser or IPP were compensated on a contingency basis or otherwise for testimony, in violation of the rules of professional conduct applicable in this Court or 18 U.S.C. § 201(c)(2), which prohibits paying fact witnesses for their testimony, this does not make evidence obtained in violation of those rules inadmissible but rather only goes to the weight to be accorded to it. *United States v. Dawson*, 425 F.3d 389, 394 (7th Cir.2005); *Tagatz v. Marquette Univ.*, 861 F.2d 1040, 1042 (7th Cir.1988); *Valentino v. Proviso Twp.*, No. 01 C 557, 2003 WL 21510329, at *3 (N.D. Ill. June 26, 2003). The Court is not convinced that the fact that Malibu Media pays IPP for its services would have changed the decision to grant the subpoena. Thus, Malibu Media's failure to apprise the Court of this fact does not warrant quashing the subpoena.

*3 Doe also argues that IPP is an unlicensed private investigator and thus that its actions in Illinois are illegal. This, Doe contends, should preclude the Court from relying on the Fieser declaration to allow early discovery. Malibu Media responds that IPP is not subject to the Illinois Private Detective, Private Alarm, Private Security, Fingerprint Vendor, and Locksmith Act of 2004, 225 Ill. Comp. Stat. 447/5–3 *et seq.* Doe is asking the Court to determine what constitutes the unlicensed practice of private investigation, but that is a determination left to the Illinois Department of Financial and Professional Regulation. *See* 225 Ill. Comp. Stat. 447/50–15 (setting forth the role of the Department in overseeing and enforcing the act); *Thompson v. Gordon*, 851 N.E.2d 1231, 1237, 221 Ill.2d 414, 303 Ill.Dec. 806 (2006). Thus, the Court need not further address this issue here, although this does not preclude Doe from raising the defense on the merits. *See Malibu Media, LLC v. Weiheong Koh*, No. 13–10515, 2013 WL 5853480, at *2 (E.D.Mich. Oct. 30, 2013) (refusing to strike affirmative defense regarding whether Michigan's professional investigator licensure act

was violated); cf. *Arista Records LLC v. Does 1–27,* 584 F.Supp.2d 240, 257–58 (D.Me.2008) (refusing to quash subpoena based on argument that declaration was obtained through unlicensed investigations). *But see Capitol Records Inc. v. Thomas–Rasset,* No. 06–1497 (MJD/RLE), 2009 WL 1664468, at *2 (D. Minn. June 11, 2009) (Minnesota Private Detectives Act did not apply to plaintiff's investigator that did not operate in Minnesota and merely monitored incoming internet traffic sent by a computer in Minnesota). At this stage, the Court sees no need to further delve into the arrangement between Malibu Media and its investigators to determine whether the subpoena issued to Comcast should be quashed. To the extent Doe's arguments go to the reliability or accuracy of Malibu Media's method of identifying Doe's IP address and BitTorrent activity or the role various individuals or companies played in doing so, they should be raised in mounting a defense to the suit instead of here. *See TCYK, LLC,* 2013 WL 5567772, at *3 (N.D.Ill. Oct. 9, 2013).

Additionally, Doe briefly argues that Malibu Media did not apprise the Court that up to 30% of those identified as defendants in BitTorrent cases may be innocent and thus that the subpoena may not identify the correct infringer. But this is not a reason to quash the subpoena, for even if the person associated with Doe's IP address did not download the files at issue in this suit, obtaining that person's information "is the logical first step in identifying the correct party." *TCYK, LLC v. Does 1–44,* No. 13–cv–3825, 2014 WL 656786, at *4 (N.D.Ill. Feb. 20, 2014); *see also reFX Audio Software, Inc. v. Does 1–111,* No. 13 C 1795, 2013 WL 3867656, at *2 (N.D.Ill. July 23, 2013) ("[The] argument that the subpoena should be quashed because the information sought will not itself identify the actual infringer demonstrates a lack of understanding of the basic scope of discovery under the federal rules .... Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.").

Finally, Doe cannot argue that the subpoena directed at Comcast imposes an undue burden on Doe, for it does not require Doe to do anything. *See, e.g., TCYK, LLC,* 2014 WL 656786, at *4; *Purzel Video GmbH v. Does 1–84,* No. 13 C 2501, 2013 WL 4478903, at *3 (N.D.Ill. Aug. 16, 2013); *reFX Audio Software, Inc.,* 2013 WL 3867656, at *3; *Malibu Media, LLC v. Reynolds,* No. 12 C 6672, 2013 WL 870618, at *6 (N.D.Ill. Mar. 7, 2013); *Sunlust,* 2012 WL 3717768, at *2. Nor is Doe's disagreement with Malibu Media's litigation tactics a reason to vacate the Court's order and

quash the subpoena. Attempting to besmirch Malibu Media's reputation "does little to support Defendant's argument that [Malibu Media] did not establish good cause for the expedited discovery." *Zambezia Film Pty, Ltd. v. Does 1–65,* No. 13 C 1321, 2013 WL 4600385, at *2 (N.D.Ill. Aug. 29, 2013).

As even Doe recognizes, a motion for early discovery is the only manner by which Malibu Media can determine the identity of alleged infringers. Doc. 20 at 1. Quashing the subpoena would effectively prevent Malibu Media from seeking any remedy for the alleged copyright violations. Allowing the subpoena to stand, however, still provides "Doe Defendants a full opportunity to deny their liability and to raise any other defenses at the appropriate time if they are named as defendants." *First Time Videos,* 276 F.R.D. at 251. But because Doe's counsel has filed an appearance, in this instance, Doe could agree to accept service of the complaint without the need for Comcast to comply with the subpoena. *See Malibu Media, LLC,* 2013 WL 5876192, at *3. The parties should discuss this option before Malibu Media proceeds with obtaining the information requested in the subpoena from Comcast. If Doe refuses to accept service, however, Malibu Media may proceed in enforcing the subpoena on Comcast.

## II. Doe's Request for an Order for Malibu Media to Show Cause Why It Should Not Be Sanctioned

*4 Doe has also included in his motion a request that this Court order Malibu Media to show cause why it and its counsel should not be sanctioned pursuant to 19 U.S.C. § 1927 and the Court's inherent authority for its conduct in seeking early discovery. But because the Court does not find it appropriate to vacate its prior order and quash the subpoena issued to Comcast, Doe's request is denied.

## CONCLUSION

For the foregoing reasons, Defendant John Doe's motion to vacate the Court's order granting early discovery, to quash the subpoena, and to have the Court order Malibu Media to show cause why it and its counsel should not be sanctioned [12] is denied.

**All Citations**

Not Reported in F.Supp.2d, 2014 WL 1228383

**Malibu Media, LLC v. Doe, Not Reported in F.Supp.2d (2014)**

2014 WL 1228383

---

**End of Document**  © 2015 Thomson Reuters. No claim to original U.S. Government Works.

---

# EXHIBIT 4

**reFX Audio Software, Inc. v. Does 1-111, Slip Copy (2013)**

2013 WL 3867656

2013 WL 3867656
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois,
Eastern Division.

REFX AUDIO SOFTWARE, INC., Plaintiff,
v.
DOES 1–111, Defendants.

No. 13 C 1795.   |   July 23, 2013.

**Attorneys and Law Firms**

Patrick J. Keating, Chicago, IL, Paul A. Lesko, Simmons Browder Gianaris Angelides & Barnerd LLC, Alton, IL, for Plaintiff.

Michael Jeffrey Gunderson, Gunderson & Tharp, LLC, Howard B. Rockman, Howard B. Rockman, P.C., Chicago, IL, for Defendants.

*MEMORANDUM OPINION AND ORDER*

ROBERT W. GETTLEMAN, District Judge.

*1 Plaintiff reFX Audio Software, Inc., a Canadian corporation that produces, markets, and sells sound mixing software and owns the copyright to a ROM Synthesizer–Plug–In Software program (the "Software"), has sued 111 anonymous defendants (Does 1–111) known to plaintiff only by their alleged use of internet protocol ("IP") addresses. Plaintiff alleges that defendants have committed direct and contributory copyright infringement under the under the Copyright Act of 1976 as amended, 17 U.S.C. § 101 *et seq.*, and civil conspiracy, by copying, distributing, and sharing the Software. After filing suit, plaintiff sought and was granted leave to serve thirdparty subpoenas on defendants' internet service providers ("ISP") to determine the names associated with the IP addresses. Does 51, 68, 97 and 101 ("defendants") have now moved to quash those subpoenas, each arguing that they had been improperly joined under Fed.R.Civ.P. 20. Doe 51 also argues that the information sought is not relevant or necessary to the pending action and that the subpoena is unduly burdensome under Fed.R.Civ.P. 45(c)(3) (A)(IV).[1] Those motions are denied.

**BACKGROUND**

This is one of an ever increasing number of cases filed by the instant plaintiff and others against unnamed defendants who allegedly illegally downloaded the plaintiffs' copyrighted works using the BitTorrent Protocol. A brief description of BitTorrent and its use to download movies and other copyrighted works can be found in this court's order in *Malibu Media, LLC v. John Does 1–25*, No. 12–cv–9655 (N.D. Ill. April 24, 2013) ("*Does 1–25* "), as well as in Judge Castillo's opinion in *Malibu Media, LLC v. John Does 1–6*, 2013 WL 2150679 (N.D.Ill. May 17, 2013) ("*Does 1–6* ") and Judge Kendall's opinion in *Malibu Media, LLC v. Reynolds*, 2013 WL 870618 (N.D.Ill. March 7, 2013).

**DISCUSSION**

Defendant Doe 51 first contends that the subpoenas to the third-party ISP should be quashed because compliance will not result in the identification of the alleged infringers. According to defendant, obtaining the name and contact information for the person to whom an ISP sends its monthly bill bears no rational relationship to the person or entity that might have actually accessed plaintiff's software.

Fed.R.Civ.P. 45(a) permits the issuance of subpoenas to produce documents and tangible things in a person's custody or control. The rule requires a court to quash or modify a subpoena if it: (1) fails to allow a reasonable time for compliance; (2) requires a person who is neither a party nor a party's officer to travel more than 100 miles; (3) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (4) subjects a person to undue burden. Fed.R.Civ.P. 45(c)(3)(A) (I–V). The party seeking to quash bears the burden of demonstrating that the subpoena falls within one of these categories.

As an initial matter, the court notes that defendants seek to quash subpoenas served to non-party ISPs. As a general rule, a party lacks standing to quash a subpoena issued to a nonparty unless the party has a claim of privilege attached to the information sought or unless the subpoena implicates the parties' legitimate privacy interests. *See Hard Drive Productions v. Does 1–48*, 2012 WL 2196038 at *3 (N.D.Ill. June 14, 2012). The district courts in this circuit are divided on the issue of whether an anonymous defendant accused of copyright infringement has standing to object to a subpoena

2013 WL 3867656

issued to his ISP. *See Reynolds*, 2013 WL 870618 at *5 (comparing cases). Those cases that find standing do so on the basis that the party has "at least a minimal privacy interest in the information requested by the subpoenas...."*Sunlust Pictures, LLC v. Does 1–75,* 2012 WL 3717768 at *2 (N.D.Ill. August 27, 2012). Those cases that hold that the parties lack standing generally conclude that "because internet subscribers must convey their identity and other information to an ISP in order to establish an account, they do not have a reasonable expectation of privacy in their subscriber information."*Hard Drive Productions,* 2012 WL 2196038 at *4. Nor can a party rely on the First Amendment to remain anonymous "because the First Amendment does not protect copyright infringement and to the extent anonymity is used to mask copyright infringement or to facilitate infringement by other persons, it is unprotected."*Id.* (quoting *Arista Records, LLC v. Doe 3,* 604 F.3d 110,118 (2d Cir.2012)).

*2 As this court noted in *Does 1–25,* it agrees generally that defendants lack standing to challenge the instant third-party subpoenas. As in *Does 1–25,* however, it need not reach the issue because even if defendants have standing, there is no merit to the challenge to the subpoenas. Doe 51's argument that the subpoena should be quashed because the information sought will not itself identify the actual infringer demonstrates a lack of understanding of the basic scope of discovery under the federal rules. "Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter."Fed.R.Civ.P. 26(b)(1). Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. *Id.*

Identifying the customers associated with the IP addresses of which plaintiff is aware is relevant to its claims. Even if the customer associated with the IP address is not necessarily the person who illegally download plaintiff's software, the customer's name is the first step in identifying the proper defendant. Consequently, Doe 51's motion to quash the subpoena as seeking irrelevant information is denied.

Next, all defendants argue that the subpoenas should be quashed because the Doe defendants have been improperly joined under Fed.R.Civ.P. 20. As noted by this court in *Does 1–25,* there has been a plethora of litigation on the issue of joining as defendants persons who allegedly participated in a

single BitTorrent "swarm" to illegally download copyrighted works. There is a split of authority on this issue. *See Does 1–6,* 2013 WL 2150679 at *7–14. This court agrees with Judge Castillo's comprehensive and well-reasoned opinion in *Does 1–6,* in which he concludes that "although there are compelling arguments on both sides, the Court finds that the alleged conduct of each Doe defendant shares an aggregate of operative facts that give rise to [the plaintiff's] claims of infringement against each Doe defendant, such that the 'logical relationship' test is satisfied at this early stage of the litigation. In other words, [the plaintiff] has sufficiently pleaded that its claims arise out of the same 'transaction, occurrence, or series of transactions or occurrences'.... The shared operative facts are not solely that each Doe defendant used BitTorrent but that 'each Doe defendant downloaded the same Torrent file that was created by the same initial seeder, intending to: (1) utilize other users' computers to download pieces of the same [Copyrighted Works], and to allow his ... own computer to be used in the infringement by other peers and defendants in the same swarm.'"*Id.* At *11 (quoting *Patrick Collins, Inc. v. Does 1–21,* 282 F.R.D. 161, 165 (E.D.Mich.2012)).

*3 As this court noted in *Malibu* and Judge Castillo noted in *Does 1–6,*

> It is difficult to see how the sharing and downloading activity alleged in the Complaint—a series of individuals connecting either directly with each other or as part of a chain or 'swarm' of connectivity designed to illegally copy and share the exact same copyrighted file—could *not* constitute a 'series of transactions or occurrences' for purposes of Rule 20(a). [*Digital Sin, Inc. v. Does 1–176,* 279 F.R.D. 239, 244 (S.D.N.Y.2012) ].

For the reasons described in *Does 1–6,* the argument that joinder is proper only if defendants participated in the same swarm at the same time is also rejected. This argument ignores the fact that permissive joinder under Rule 20(a) does not require that defendants act in concert with each other, *see United States v. Miss.,* 380 U.S. 128, 143, 85 S.Ct. 808, 13 L.Ed.2d 717 (1965), nor does it "have as a precondition that there be temporal distance or temporal overlap."*Patrick Collins v. Does 1–21,* 282 F.R.D. at 167. All that is required is a logical relationship between the separate

causes of action.*Does 1–6,* 2012 WL 2150679 at \*13 (citing *In re EMC Corp.,* 677 F.3d 1351, 1358 (Fed.Cir.2012)). To require plaintiffs to establish that the joined defendants shared information directly with each other construes Rule 20 too narrowly. Rule 20 is satisfied if defendants indirectly interact with one another through participation in a single swarm. "[I]t is important to consider that while a peer directly uploads to only a small number of peers, those peers in turn upload pieces to other peers that later join the swarm. Thus, a defendant's 'generation' of peers—peers that a defendant likely directly uploaded to—helped pass on pieces of the [plaintiff's software] to the next 'generation' of active peers."*Third Degree Films v. Does 1–36,* 2012 WL 2522151 at \*9 (E.D.Mich. May 29, 2012). Consequently, the court concludes that plaintiff has sufficiently alleged proper joinder among all defendants. *See also Bicycle Peddler, LLC v. Does 1–12,* 2013 WL 3455849 (N.D.Ill. July 9, 2013) (Tharp, J.).[2]

Next, defendants argue that the subpoenas should be quashed because compliance would be unduly burdensome. Defendants' misunderstand Rule 45(c)(3)(A)(IV)' s "unduly burdensome" requirement. The burden to which Rule 45 refers is the burden on the responding or subpoenaed party or entity, not a third party. The instant subpoenas do not compel defendants to produce any information and thus do not burden them in any manner. *Does 1–6,* 2013 WL 2150679 at \*4; *Sunlust Pictures LLC,* 2012 WL 3717768 at \*2.

## CONCLUSION

For the reasons described above, all motions to quash the third-party subpoenas and/or for protective orders (Docs. 19, 22, 27 and 30) are denied.

**All Citations**

Slip Copy, 2013 WL 3867656

**Footnotes**

1     Doe 51's motion contains an alternative request for a protective order.

2     Even if joinder of all defendants is not proper, improper joinder is not grounds to quash the third party subpoenas under Fed.R.Civ.P. 45.

**End of Document**                  © 2015 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT 5

2013 WL 4805021
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois,
Eastern Division.

The THOMPSONS FILM, LLC, Plaintiff,
v.
DOES 1–60, Defendants.

No. 13 C 2368. | Sept. 6, 2013.

**Attorneys and Law Firms**

Michael A. Hierl, Todd Sheldon Parkhurst, Hughes Socol
Piers Resnick & Dym Ltd., Chicago, IL, for Plaintiff.

*ORDER*

JOAN B. GOTTSCHALL, District Judge.

**\*1** Two Doe defendants have moved to quash or vacate
the subpoena issued by Plaintiff to their Internet Service
Providers ("ISPs"). Motions [16] and [17] are denied.
Plaintiff, however, is entitled only to the IP account holders'
names and mailing addresses. Plaintiff shall not publish the
Doe defendants' identities without leave of the court, and no
Doe defendants shall be named in any amended complaint or
other pleadings filed with the court.

*STATEMENT*

Plaintiff The Thompsons Film LLC brings a complaint
for copyright infringement and contributory copyright
infringement against sixty unnamed "John Doe" defendants.
Plaintiff alleges that the defendants used the BitTorrent
protocol to unlawfully transfer the copyrighted motion picture
"The Thompsons" (a film about a vampire family on the run
from the law), to which Plaintiff holds the exclusive rights,
in violation of the United States Copyright Act, 17 U.S.C. §
101, *et seq.* Now before the court are two motions by Doe
defendants (Doe # s unknown) to quash the subpoenas issued
to their ISPs and to sever and dismiss them from this action.
For the following reasons, the motions are denied.

**I. BACKGROUND**

Plaintiff alleges that the Doe defendants used the BitTorrent
protocol to download and distribute its copyrighted motion
picture. A description of the protocol can be found in
numerous orders of other courts in this district. *See, e.g.,
TCKY, LLC v. Does 1–87,* No. 13 C 3845, 2013 WL 3465186
(N.D.Ill. July 10, 2013); *Malibu Media, LLC v. John Does 1–
25,* No. 12 C 9655 (N.D.Ill. Apr. 24, 2013); *Malibu Media,
LLC v. John Does 1–6,* No. 12 C 8903, 2013 WL 2150679
(N.D.Ill. May 17, 2013).

To summarize briefly, the BitTorrent software protocol
breaks up large digital files into smaller pieces. Participants
in a BitTorrent file-sharing instance (a "swarm") download
these individual pieces from other peer participants. When an
individual piece has been downloaded, the protocol permits a
participant to make that piece available for peers to download.
When a participant has downloaded copies of all of the pieces
that made up the original file, the software assembles a copy
of the file from the constituent pieces. After his or her own
copy is assembled, the user may elect to leave the BitTorrent
software running, which makes pieces of the file available
for new peers to download. A BitTorrent user may leave the
swarm at any time, before or after completing her download,
ending her participation in both downloading and sharing. A
user may also rejoin the swarm at a later time to complete
her download or to continue sharing pieces with other peers.
Thus, while a participant in the swarm is downloading the
file, and possibly even afterwards, that participant may also
be acting as a source for the download of portions of the
file by other peers in the swarm. In this case, the complaint
alleges that each of the Doe defendants participated in the
same BitTorrent swarm, using the same seed file, to download
and distribute Plaintiff's copyrighted motion picture.

**\*2** At this time, the Doe defendants are known to Plaintiff
only by the Internet Protocol ("IP") addresses assigned
by their ISPs and by the date and time at which the
infringing activity was observed. Plaintiff alleges that each
of the Doe defendants has an IP address based in Illinois.
Plaintiff has issued subpoenas to the ISPs seeking information
sufficient to identify each Doe defendant's name and contact
information. The Does moving to quash were notified by
Comcast Corporation of the subpoena and ask the court to
prevent Comcast from providing their personal information
to Plaintiff. (*See* Motion to Quash, ECF No. 16.)

**Thompsons Film, LLC v. Does 1-60, Slip Copy (2013)**

2013 WL 4805021

## II. ANALYSIS

The issues raised in the motions to quash have been considered at length in the opinions of other courts in this district, as well as by this court in previous orders. *See, e.g., Purzel Video GmbH v. Does 1–84.* No. 13 C 2501, 2013 WL 4478903 (N.D.Ill. Aug.16, 2013); *Bicycle Peddler, LLC v. Does 1–99,* No. 13 C 2375, 2013 WL 4080196 (N.D.Ill. Aug.13, 2013). The court's discussion is therefore brief.

Federal Rule of Civil Procedure 45(a) allows the issuance of subpoenas to produce documents in a person's custody or control. A court must quash or modify a subpoena if it: (1) fails to allow a reasonable time for compliance; (2) "requires a person who is neither a party nor a party's officer to travel more than 100 miles"; (3) "requires disclosure of privileged or other protected matter, if no exception or waiver applies"; or (4) "subjects a person to undue burden."Fed.R.Civ.P. 45(c)(3)(A) (i-iv). A party moving to quash bears the burden of demonstrating that the subpoena falls within one of these categories. To evaluate whether a subpoena imposes an undue burden, the court asks whether "the burden of compliance with [the subpoena] would exceed the benefit of production of the material."*Nw. Mem. 'I Hosp. v. Ashcroft,* 362 F.3d 923, 927 (7th Cir.2004).

A plaintiff alleging copyright infringement is entitled to the information sought through the subpoenas. Furthermore, the subpoenas impose no undue burden on the Doe defendants, who are not the party who must comply with the subpoena. One of the Doe defendants argues that the subpoena should be quashed because he or she did not download the movie, and someone else could have used his or her IP address to do so. But the fact that the customer associated with the IP address may not be the actual infringer is not a basis to quash the subpoena. As Judge Gettleman recently explained in *reFX Audio Software,*

> "Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition and location of any documents or other tangible things and the identity and location of persons

who know of any discoverable matter."Fed.R.Civ.P. 26(b)(1).... Even if the customer associated with the IP address is not necessarily the person who illegally download[ed] plaintiff's software, the customer's name is the first step in identifying the proper defendant.

\*3 *Id.* at \*2. Insofar as IP address holders may contend that they were not the infringing parties, such arguments go to the merits of the action and are "not relevant as to the validity or enforceability of a subpoena, but rather should be presented and contested once parties are brought properly into the suit."*Hard Drive Prods. v. Does 1–48,* No. 11 C 9062, 2012 WL 2196038, at \*4 (N.D. Ill. June 14, 2012).

## III. CONCLUSION

The court denies the motions to quash and vacate the subpoenas. It will, however, allow the Doe defendants to proceed anonymously. Other courts have deemed it prudent to allow defendants to proceed by pseudonym in copyright infringement proceedings, given the "substantial possibility that the names turned over by ISPs will not accurately identify the individuals who actually downloaded or shared the copyrighted material."*TCYK, LLC v. Does 1–87,* No. 13 C 3845, 2013 WL 3465186, at \*4 (N.D.Ill. July 10, 2013). Therefore, Plaintiff may not publish the defendants' identities without leave of the court. No defendants shall be named in any amended complaint or other pleadings filed with the court; they shall instead be identified by Doe # or IP address.

To further limit any potential for harassment, the court also holds that the identity and mailing address of the account holder are the only pieces of information that are discoverable. Plaintiff not entitled to the telephone number or email address of the account holders and should not use these means to make contact with them. Moreover, Plaintiff must communicate with Doe defendants through counsel if they have legal representation.

**All Citations**

Slip Copy, 2013 WL 4805021

---

**End of Document**

© 2015 Thomson Reuters  No claim to original U.S. Government Works.

# EXHIBIT 6

**Purzel Video GmbH v. Does 1-108, Not Reported in F.Supp.2d (2013)**

2013 WL 6797364

2013 WL 6797364
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois, Eastern Division.

Purzel Video GmbH, Plaintiff,

v.

Does 1–108, Defendants.

Case No. 13 C 0792    |    Filed December 19, 2013

**Attorneys and Law Firms**

Kenneth Patrick Danzinger, Simmons Browder Gianaris Angelides & Barnerd LLC, Alton, IL, Patrick J. Keating, Chicago, IL, Paul A. Lesko, Simmons Browder Gianaris Angelides & Barnerd LLC, Alton, IL, for Plaintiff.

Jonathan Lucas Allen Phillips, Shay Kepple Phillips, Ltd., Peoria, IL, Erin Kathryn Russell, The Russell Firm, Charles Lee Mudd, Jr., Liz Brodzinski, Stephanie Margaret Solera, Mudd Law Offices, Chicago, IL, for Defendants.

## MEMORANDUM OPINION & ORDER

JOAN B. GOTTSCHALL United States District Judge

*1 Plaintiff Purzel Video GmbH ("Purzel") brings a three-count complaint for copyright infringement, contributory copyright infringement, and civil conspiracy against 108 unnamed "John Doe" defendants. [1] Purzel alleges that the Doe defendants used the BitTorrent software protocol to unlawfully transfer a copyrighted adult motion picture, to which Purzel holds the exclusive rights, in violation of the United States Copyright Act, 17 U.S.C. § 101, *et seq.* Purzel alleges that all of the defendants participated in the same BitTorrent "swarm" between August 2012 and January 2013.

Now before the court are numerous motions by the Doe defendants to quash the subpoenas issued by Purzel to their Internet Service Providers ("ISPs") and to sever and dismiss the individual Doe defendants from this action, as well as Purzel's motion to compel compliance with the nonparty subpoena issued to SBC Internet Services, LLC d/b/a AT & T Internet Services ("AT & T"). For the reasons explained below, the court rules as follows. The defendants' motions to quash are denied, the motions to sever are denied without prejudice, and count III of the complaint (the civil conspiracy

count) is dismissed. The defendants will be allowed to proceed anonymously in this litigation. Finally, Purzel's motion to compel AT & T's compliance with the subpoena is granted.

## I. BACKGROUND

At the time the complaint was filed, the Doe defendants were known to Purzel only by the Internet Protocol ("IP") addresses assigned by their ISPs and by the date and time at which the alleged infringement was observed. Purzel alleges that each of the defendants reside in Illinois. Purzel has issued subpoenas to the ISPs seeking information sufficient to identify the subscriber associated with each IP address. At this early stage in the litigation, Purzel considers these subscribers to be the Doe defendants, although it acknowledges that they may prove not to be the actual infringers of Purzel's copyright. [2]

Some of the subscribers have been notified by their ISP that their information has been subpoenaed. A subset of this group has moved to quash the subpoena and/or requested that the court sever and dismiss them from this case. The following motions by Doe defendants are currently before the court:

- Motion to Quash, Sever, and Dismiss, and Motion to Proceed Anonymously [17] by Doe 56, based on improper joinder and Purzel's inability to identify the actual downloader of copyrighted material based on the identity of the subscriber. Doe 56 contends that s/he did not download the copyrighted film, that the subpoena is an improper attempt to extort a settlement, and that the complaint fails to state a claim of civil conspiracy.

  *2 • Motion to Quash, Sever, and Dismiss, and Motion to Proceed Anonymously [20] by Doe 103. Doe 103 raises the same arguments as Doe 56.

- Motion to Quash, Sever, and Proceed Anonymously [23] by Doe 101, based on improper joinder and Purzel's inability to identify the actual downloader based on the identity of the subscriber.

- Motion to Quash and Sever [48] by Doe 48, based on improper joinder and the First Amendment's protection of anonymous speech and association.

Also before the court is Purzel's motion to compel AT & T to produce documents sought through a nonparty subpoena.

According to Purzel, forty-one of the Doe defendants utilized AT & T as their ISP. Purzel issued a subpoena to AT & T on February 26, 2013, seeking the production of the subscribers' identities. After AT & T objected, Purzel issued a new subpoena on April 30, 2013. AT & T again objected to the subpoena, necessitating the motion to compel.

## II. THE DOE DEFENDANTS' MOTIONS

As an initial matter, Doe 101's motion [23] is denied as moot because Purzel has voluntarily dismissed Doe 101 from this action with prejudice. The issues raised in the remaining motions to quash and sever have been considered at length in the opinions of other courts in this district, and this court's discussion is therefore brief.

### A. The BitTorrent Software Protocol

Purzel alleges that the Doe defendants each used the BitTorrent software protocol to download and distribute its copyrighted motion picture. Many fellow district courts have described the BitTorrent protocol in detail. *See, e.g.,TCKY, LLC v. Does 1–87*, No. 13 C 3845, 2013 WL 3465186 (N.D.Ill. July 10, 2013); *Malibu Media, LLC v. John Does 1–25*, No. 12 C 9655 (N.D.Ill. Apr. 24, 2013); *Malibu Media, LLC v. John Does 1–6*, 291 F.R.D. 191 (N.D.Ill.2013); *Malibu Media, LLC v. Reynolds*, No. 12 C 6672, 2013 WL 870618 (N.D.Ill. Mar. 7, 2013). To summarize briefly, the BitTorrent protocol breaks up large digital files into smaller pieces. Participants in a BitTorrent file-sharing instance (a "swarm") download these individual pieces from other peer participants. When an individual piece has been downloaded, the protocol permits a participant to make that piece available for peers to download. When a participant has downloaded copies of all of the pieces that made up the original file, the software assembles a copy of the file from the constituent pieces. After his or her own copy is assembled, the user may elect to leave the BitTorrent software running, which makes pieces of the file available for new peers to download. A BitTorrent user may leave the swarm at any time, before or after completing her download, ending her participation in both downloading and sharing. A user may also rejoin the swarm at a later time to complete her download or to continue sharing pieces with other peers. Thus, while a participant in the swarm is downloading the file, and possibly even afterwards, that participant may also be acting as a source for the download of portions of the file by other peers in the swarm. In this case, the complaint alleges that each of the

Doe defendants participated in the same BitTorrent swarm to download and distribute Purzel's copyrighted motion picture.

### B. Motions to Quash

**\*3** The Doe defendants argue that the subpoena should be quashed because an IP address does not identify an individual infringing downloader, and because their privacy interests and First Amendment rights would be violated if their ISP provided their names and contact information to Purzel. The issues raised in the motions to quash have been addressed by this court in previous orders. *See, e.g.,Purzel Video GmbH v. Does 1–84*, No. 13 C 2501, 2013 WL 4478903 (N.D.Ill. Aug. 16, 2013); *Bicycle Peddler, LLC v. Does 1–99*, No. 13 C 2375, 2013 WL 4080196 (N.D.Ill. Aug. 13, 2013).

Federal Rule of Civil Procedure 45(a) allows the issuance of subpoenas to produce documents in a person or entity's custody or control. The rule requires a court to quash or modify a subpoena if it: "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter ...; or (iv) subjects a person to undue burden." Fed.R.Civ.P. 45(d)(3)(A). The party moving to quash bears the burden of showing that the subpoena falls into one of these impermissible categories. *Pac. Century Int'l, Ltd. v. Does 1–37*, 282 F.R.D. 189, 193 (N.D.Ill.2012) (citing *Williams v. Blagojevich*, No. 05 C 4673, 2008 WL 68680, at \*3 (N.D.Ill. Jan. 2, 2008)). In assessing whether a subpoena imposes an undue burden, the court considers whether the "burden of compliance with it would exceed the benefit of production of the material sought." *Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 927 (7th Cir.2004).

A plaintiff alleging copyright infringement is entitled to the information sought through the subpoenas, and the subpoenas impose no undue burden on the Doe defendant, who is not the party who must comply with the subpoena. *See, e.g.,Malibu Media, LLC v. Reynolds*, 2013 WL 870618, at \*6. Several Doe defendants argue that the subpoena should be quashed because they did not download the movie in question, and someone else could have used their IP address to do so. But the fact that the customer associated with the IP address may not be the actual infringer is not a basis to quash the subpoena. As Judge Gettleman recently explained in *reFX Audio Software*,

[E]ven if defendants have standing, there is no merit to the challenge to the subpoenas. [The] argument that

**Purzel Video GmbH v. Does 1-108, Not Reported in F.Supp.2d (2013)**

2013 WL 6797364

the subpoena should be quashed because the information sought will not itself identify the actual infringer demonstrates a lack of understanding of the basic scope of discovery under the federal rules. "Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed.R.Civ.P. 26(b)(1).... Even if the customer associated with the IP address is not necessarily the person who illegally download[ed] plaintiff's software, the customer's name is the first step in identifying the proper defendant.

*reFX Audio Software, Inc. v. Does 1–111,* No. 13 C 1795, 2013 WL 3867656, at *2 (N.D.Ill. July 23, 2013).

Doe 48 further argues that the subpoena should be quashed because the First Amendment protects his or her right to engage in anonymous speech on the internet. But the court finds that the Doe defendants' right to anonymous speech does not outweigh Purzel's interest in protecting its copyright. Although the defendants do have a right to express themselves anonymously on the internet, those speech rights are limited and are outweighed by Purzel's need for the subpoenaed information. In *First Time Videos, LLC v. Does 1–500,* 276 F.R.D. 241, 248–49 (N.D.Ill.2011), Judge Castillo rejected an argument similar to that raised here, explaining that the plaintiff copyright holder had made "a concrete showing of a prima facie claim of actionable harm" by alleging the infringement of its valid copyright, had specifically requested information likely to allow it to identify the defendants, and had no other way to identify the infringers. *Id.* (citing *Sony Music Entm't Inc. v. Does 1–40,* 326 F.Supp.2d 556, 564–65 (S.D.N.Y.2004)). Furthermore, the Doe defendants' expectation of privacy was limited because they had provided their subscriber information to their ISPs. *Id.* at 249.

**\*4** The other arguments offered by the Doe defendants in support of their motions to quash the subpoena essentially amount to a denial of liability—they contend that they were not the infringing parties. Such arguments go to the merits of the action and are "not relevant as to the validity or enforceability of a subpoena, but rather should be presented and contested once parties are brought properly into the suit." *Hard Drive Prods. v. Does 1–48,* No. 11 C 9062, 2012 WL 2196038, at *4 (N.D. Ill. June 14, 2012).

Because the subpoenas will yield information relevant to Purzel's claims, and because the requirements of Rule 45 are satisfied, the court denies the motions to quash. The court will, however, modify the subpoena to the extent they command information other than the names and geographic addresses of the Doe defendants. The defendants' telephone numbers and email addresses need not be provided. The court will also require Purzel to refrain from publishing the Doe defendants' identities without further leave of the court, as Does 56 and 103 request in their motions. Numerous courts have deemed it prudent to allow defendants to proceed by pseudonym during preliminary stages of copyright infringement proceedings, given the "substantial possibility that the names turned over by ISPs will not accurately identify the individuals who actually downloaded or shared the copyrighted material." *TCYK, LLC v. Does 1–87,* 2013 WL 3465186, at *4. Accordingly, Purzel must identify the defendants in all filings with the court only by Doe number or IP address. Furthermore, any communication by Purzel to a defendant suggesting that the defendant can or will be named in this action shall constitute a violation of this court's order and grounds for dismissal of the action against that defendant pursuant to Federal Rule of Civil Procedure 41(b).

**C. Permissive Joinder (Rule 20)**

The Doe defendants also argue that it is inappropriate to join, in a single suit, many anonymous defendants who have allegedly participated in the same BitTorrent swarm. Under Federal Rule of Civil Procedure 20(a)(2), persons may be joined "in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Joinder is strongly encouraged. *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 724 (1966). The Doe defendants argue, however, that the requirements for joinder pursuant to Rule 20(a)(2) are not satisfied because they did not participate in the same transaction or series of transactions, nor do their cases share common questions of law or fact.

District courts across the nation are split as to whether and when participation in BitTorrent swarm can constitute a "transaction, occurrence, or series of transactions or occurrences" under Rule 20. Some district courts have held that alleging any participation by defendants in the same BitTorrent swarm is enough to satisfy the requirement that the

**Purzel Video GmbH v. Does 1-108, Not Reported in F.Supp.2d (2013)**

2013 WL 6797364

claims arise out of a "series of transactions or occurrences." Other courts have held that proper joinder depends upon allegations that defendants were present in the same swarm at the same time, participated in a swarm in close temporal proximity, or shared data directly with each other. *See Malibu Media, LLC v. John Does 1–6,* 291 F.R.D. at 203 (collecting cases).

**\*5** This court is persuaded by Judge Castillo's opinion in *Malibu Media, LLC v. John Does 1–6,* which reasons that all that Rule 20 requires "is a logical relationship between the separate causes of action," not a precondition of acting "in concert" or "temporal distance or temporal overlap." *Id.* at 204. Judge Castillo noted that in BitTorrent cases, "[t]he shared operative facts are not solely that each Doe Defendant used BitTorrent, but that 'each Doe Defendant downloaded the same Torrent file that was created by the same initial seeder, intending to: 1) utilize other users' computers to download pieces of the same [copyrighted works], and 2) allow his ... own computer to be used in the infringement by other peers and Defendants in the same swarm.' " *Id.* at 202 (quoting *Patrick Collins, Inc. v. Does 1–21,* 282 F.R.D. 161, 165 (E.D.Mich.2012)). Similarly, Judge Tharp has emphasized that "BitTorrent requires a cooperative endeavor among those who use the protocol. Every member of a swarm joins that cooperative endeavor knowing that, in addition to downloading the file, they will also facilitate the distribution of that identical file to all other members of the swarm." *TCYK, LLC v. John Does 1–87,* 2013 WL 3465186, at \*4. The court agrees with Judges Castillo and Tharp that " 'it is difficult to see how the sharing and downloading activity alleged in the Complaint—a series of individuals connecting either directly with each other or as part of a chain or 'swarm' of connectivity designed to illegally copy and share the exact same copyrighted file—could not constitute a 'series of transactions or occurrences' for purposes of Rule 20(a).' " *Id.* (quoting *Digital Sin. Inc. v. Does 1–176,* 279 F.R.D. 239, 244 (S.D.N.Y.2012)). *See also Bicycle Peddler, LLC v. Does 1–12,* No. 13 C 2372, 2013 WL 3455849, at \*3–4 (N.D.Ill. July 9, 2013).

The complaint in this case alleges that the Doe defendants interacted with one another indirectly through participation in the same BitTorrent swarm. The copy of the motion picture that each defendant allegedly downloaded came from the same source or seed file. Based on these allegations, the claims against the defendants arise out of the same transaction or occurrence for the purposes of Rule 20(a).

Furthermore, Rule 20(a)(2)(B)'s requirement that the claims involve shared questions of law or fact common to all the defendants is also satisfied. Purzel has asserted the same claim against all of the Doe defendants. The claims against each defendant rest on the question of whether transferring the motion picture through a BitTorrent swarm infringed upon Purzel's copyright, in violation of the Copyright Act. *See Malibu Media, LLC v. John Does 1–6,* 291 F.R.D. at 205.

**D. Discretionary Severance (Rule 21)**
Even though Purzel has satisfied the requirements for permissive joinder under Rule 20(a), the court has broad discretion to sever a party at any time. *See Sunlust Pictures, LLC v. Does 1–75,* No. 12 C 1546, 2012 WL 3717768, at \*3 (N.D.Ill. Aug. 27, 2012). Federal Rule of Civil Procedure 21 provides that, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Rule 21 gives the court discretion to sever any claim and proceed with it separately if doing so will increase judicial economy and avoid prejudice to the litigants. *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.,* 754 F.2d 738, 743 (7th Cir.1985).

The motions to quash and sever demonstrate that the defendants may have individualized legal and factual defenses. Other courts have expressed concern that joinder of large numbers of defendants in BitTorrent-related copyright infringement lawsuits will impede just, speedy, and inexpensive resolution of the cases. *See, e.g., Malibu Media, LLC. v. Reynolds,* 2013 WL 870618, at \*14 (noting that "each defendant is likely to assert a unique defense"); *Third Degree Films v. Does 1–47,* 286 F.R.D. 188, 196 (D.Mass.2012) ("The Court simply cannot see how it 'promote[s] trial convenience' to hold forty-seven mini-trials and ask one jury to make findings as to each of them."); *Patrick Collins, Inc. v. Does 1–38,* No. 12–10756–NMG, 2013 WL 1175245, at \*11 (D.Mass. Mar. 19, 2013) (finding that joinder would create "significant logistical difficulties" where 34 Doe defendants remained). The court also notes that the Local Rules of the Central District of California state that a complaint may include no more than ten "Doe or fictitiously named parties." C.D. Cal. L.R. 19–1.

**\*6** At this stage in the proceedings, however, these concerns are largely hypothetical. In the court's experience with similar cases, logistical nightmares have yet to arise. Indeed, at least at the early stages of the proceedings, the defendants have raised similar legal arguments, and addressing these in the context of one suit has streamlined the court's work.

2013 WL 6797364

Severing the defendants would require the court to address the same factual and legal issues in multiple cases. *See Malibu Media, LLC v. John Does 1–6*, 291 F.R.D. at 205. Joinder is encouraged, *Gibbs*, 383 U.S. at 724, and joinder at this stage of the litigation is more efficient than requiring Purzel to file many separate cases in order to obtain the discovery required to identify those responsible for downloading and distributing its motion picture. Moreover, although the court acknowledges that naming large numbers of Doe defendants in a single action deprives the federal courts of filing fees, the Northern District of Illinois has yet to adopt a Local Rule, like that adopted by the Central District of California, limiting the number of Doe defendants in a single action.

The court therefore denies, without prejudice, the Doe defendants' motions to sever and dismiss. This ruling does not foreclose a future challenge to joinder by Doe defendants who have been identified and served. *See id.* ("At this stage of the litigation, it appears that joinder will be manageable.... If joinder becomes unwieldy at a later stage of the litigation, however, the Court may sever ... pursuant to Federal Rule of Civil Procedure 21.").

### III. THE CONSPIRACY CLAIM

In count III of the complaint, Purzel brings a common-law claim of civil conspiracy based upon the underlying act of copyright infringement. Does 56 and 103 argue that Purzel has not pleaded the required elements of a civil conspiracy claim. The court construes their motions as motions to dismiss count III pursuant to Federal Rule of Civil Procedure 12(b)(6).

The complaint does not specify whether the civil conspiracy claim is brought pursuant to Illinois or federal law, but the court interprets it as a state law claim, as Illinois recognizes a common-law cause of action for civil conspiracy. In Illinois, a civil conspiracy is defined as " 'a combination of two or more persons for the purpose of accomplishing by concerted action either an unlawful purpose or a lawful purpose by unlawful means.' " *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill.1999) (quoting *Buckner v. Atl. Plant Maint., Inc.*, 694 N.E.2d 565, 571 (Ill.1998)). A plaintiff must allege facts establishing both (1) an agreement to accomplish such a goal and (2) a tortious act committed in furtherance of that agreement. *Id.* Here, Does 56 and 103 contend that Purzel has failed to plead the existence of any agreement between the Doe defendants.

The court need not decide whether the complaint adequately alleges an agreement. Even assuming that the pleading is adequate in that respect, the civil conspiracy claim is not viable. The Copyright Act preempts "all legal and equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright." 17 U.S.C. § 301(a). In this case, the act alleged to be in furtherance of the alleged conspiracy is copyright infringement. The civil conspiracy claim in count III seeks to vindicate the same rights as the direct copyright infringement claim in count I and the contributory copyright infringement claim in count II.

Because a state-law civil conspiracy claim for copyright infringement is not qualitatively different from a federal copyright infringement claim, it is preempted by the Copyright Act. *See Do It Best Corp. v. Passport Software, Inc.*, No. 01 C 7674, 2005 WL 743083, at *14 (N.D.Ill. Mar. 31, 2005); *Higher Gear Grp., Inc. v. Rockenbach Chevrolet Sales, Inc.*, 223 F.Supp.2d 953, 956, 960 (N.D.Ill.2002) (dismissing civil conspiracy claim as preempted by the Copyright Act); *cf. Stereo Optical Co. v. Judy*, No. 08 C 2512, 2008 WL 4185689, at *5 (N.D.Ill. Sept. 8, 2008) (allowing a civil conspiracy claim to proceed only as to claims distinct from a copyright infringement cause of action). *See also Two Palms Software, Inc. v. Worldwide Freight Mgmt., LLC*, 780 F.Supp.2d 916, 922 (E.D.Mo.2011) ("[T]he majority of courts that have considered this issue have held that civil conspiracy claims are preempted under the Copyright Act."). The court therefore dismisses count III of the complaint.

### IV. MOTION TO COMPEL AT & T'S COMPLIANCE WITH THE SUBPOENA

*7 AT & T has filed an opposition to Purzel's motion to compel its compliance with the subpoena. AT & T presents two general lines of argument. First, it essentially repeats the Doe defendants' arguments that joinder of multiple Doe defendants in the same suit, solely on the basis of their participation in the same BitTorrent swarm, is improper under Rule 20, and that the identification of the defendants by their IP addresses is too imprecise and threatens the interests of innocent subscribers. The court has addressed the joinder argument above, with respect to the motions to quash and sever brought by the Doe defendants, and it adheres to that reasoning. The court recognizes that many district courts have come to a contrary conclusion on the issues of joinder and severance, and it reiterates that the denial of the

**Purzel Video GmbH v. Does 1-108, Not Reported in F.Supp.2d (2013)**

2013 WL 6797364

motions to sever is without prejudice, should problems of case manageability become real and not simply hypothetical.

As to the possible lack of identity between the IP subscriber and the alleged infringer, the information sought through the subpoena is relevant to Purzel's claims, as it is a necessary step to identifying the proper defendants. Federal Rule of Civil Procedure 26(b)(1) allows a party to "obtain discovery regarding any nonprivileged matter that is relevant to the claim or defense of any party—including the ... identity and location of persons who know of any discoverable matter." The information sought need not be admissible as long as it "appears reasonably calculated to lead to the discovery of admissible information." Fed.R.Civ.P. 26(b)(1). Here, the subscriber's identity is necessary in order for Purzel to identify the person who has allegedly infringed its copyright, and there is no less burdensome approach to obtaining that information than to subpoena it from the ISP. *See. e.g.Malibu Media v. John Does 1–49*, No. 12 C 6676, 2013 WL 4501443, at *2 (N.D.Ill. Aug. 22, 2013) (Dow, J.) ("It is not a wild assumption on Plaintiff's part that the subscriber may be the alleged infringer or may lead to the alleged infringer. Without connecting the IP address to a person, Plaintiff would have no way of prosecuting infringement of its claimed copyright.").

AT & T also emphasizes, as the individual defendants have, the potential for coercive tactics on Purzel's part that might extract settlements from innocent parties, especially given the subject-matter of the copyrighted material at issue in this case. AT & T points out that Purzel has sent letters to Doe defendants in other cases threatening to name them publicly if they do not satisfy Purzel's settlement demands. The court expects, however, that by allowing the defendants to proceed anonymously in this action and limiting the information provided by AT & T to subscribers' names and geographical addresses, that coercion will be limited, and defendants will be more likely to present any potentially meritorious defenses they may have. As previously stated, should Purzel threaten to name a defendant publicly, the court will dismiss the action against that defendant as a sanction for the violation of the court's order.

AT & T further argues that the subpoena places an undue burden on it, and should be denied pursuant to Federal Rule of Civil Procedure 45. As stated above, Rule 45 provides that the court "must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter ...;

or (iv) subjects a person to undue burden." Fed.R.Civ.P. 45(d)(3)(A). The court must determine whether the "burden of compliance with it would exceed the benefit of production of the material sought." *Nw. Mem'l Hosp.*, 362 F.3d at 927.

AT & T argues that it is unduly burdened by the subpoena for the following reasons:

> The process of performing an IP lookup can be complicated and time-intensive, especially when concerns for accuracy and quality control measures are taken into account. And the IP lookup process is only one step. In these cases, the lookup would typically be followed by notices to subscribers, responding to subscriber inquiries, monitoring the responses and various deadlines, and monitoring the progress and outcome of motions in various courts. And all of this is for naught if the allegations, joinder of multiple defendants, or other fundamental aspects of the underlying lawsuit or the discovery sought are found to be insufficient and/or improper. The handling of subpoenas is even more burdensome in connection with the often-careless, increasingly unsuccessful, "factory" approach to litigation and subpoenas pursued by Plaintiff and its attorneys here.

**\*8** (Opp. to Mot. to Compel 11, ECF No. 63–1 (emphasis in original).) AT & T also complains that Purzel has issued improper subpoenas and reissued or withdrawn subpoenas, and otherwise conducted its litigation in a sloppy fashion. (*Id.* at 11 n.14.)

Obviously, responding to a subpoena seeking information for dozens of subscribers is more difficult than satisfying a subpoena for a single subscriber. But it is not clear to the court that responding to a multiple-subscriber subpoena is actually more burdensome than responding to dozens of individual subpoenas, which is what AT & T would be required to do were the court to require Purzel to pursue claims against the Doe defendants individually. Furthermore, to the extent that looking up subscriber information and responding to subscriber inquiries is costly to AT & T, Purzel has pointed

**Purzel Video GmbH v. Does 1-108, Not Reported in F.Supp.2d (2013)**

2013 WL 6797364

out that in similar cases, AT & T has charged Purzel a fee per subscriber look-up, which presumably offsets at least some of that expense. (*See* Mot. to Compel Ex. G (Nov. 30, 2012 letter), ECF No. 45–7.)

AT & T also argues that Purzel has not established good cause for the discovery sought. In fact this appears to be the crux of AT & T's argument: that "*any burden whatsoever*" is "undue" because of the nature of this litigation. (*Id.* at 11 (emphasis in original).) The court disagrees. As explained above, the information sought by Purzel is relevant and discoverable under Rule 26. In fact, it is essential to Purzel's case. *See reFX Audio Software Inc. v. Does 1–141*, No. 13–cv–940, 2013 WL 5835704, at *2 (N.D.Ill. Oct. 28, 2013) (Bucklo, J.) ("I find that the link between the copyrighted material and the alleged infringement is sufficient to withstand a good cause attack.").

Two courts in this district have denied motions to compel AT & T's compliance with similar subpoenas.[3] One court denied the motion because it concluded that joinder was improper. *See id.* For the reasons set out above, this court has reached a different conclusion on that issue. The other court denied the motion because it found that the subpoena placed an undue burden on AT & T. *reFX Audio Software Inc. v. Does 1–115*, Order Dec. 12, 2013, at 2, No. 13 C 1794 (N.D.Ill.) (Darrah, J.) ("AT & T has persuasively demonstrated the burden of accurately identifying the subscriber information for numerous unnamed defendants as well as monitoring the responses to the subpoena, including whether subscribers file motions to oppose the subpoena."). But the order considered only the burden responding to the subpoena imposed on AT & T; it did not address the plaintiff's need for the information sought through the subpoena.

Under Seventh Circuit case law, the court cannot consider only AT & T's burden. It must weigh the relevant interests and hardships of both parties. *Nw. Mem'l Hosp.*, 362 F.3d at 928. Here, given that Purzel simply cannot proceed with its claims against alleged infringers without information identifying AT & T's subscribers, the balance tilts in favor of granting the motion to compel AT & T's compliance with the subpoena. As previously stated, the subpoena is modified so as to require AT & T to provide only the subscriber's name and geographical address, and Purzel may not threaten to publicly name the subscriber should the subscriber fail to agree to a quick settlement of Purzel's claim.

*9 AT & T requests, in the alternative, that the court certify the issues presented in Purzel's motion to compel for

interlocutory appeal, pursuant to 28 U.S.C. § 1292(b). Section 1292(b) states that when a district court judge believes that an order for an interlocutory appeal involves a controlling question of law, regarding which there is a substantial ground for difference of opinion, and that an immediate appeal from the order could materially advance the ultimate termination of the litigation, the district judge may certify the request for an appeal. The appellate court may then permit the appeal at its discretion. *See* 28 U.S.C. § 1292(b).

The court declines to certify the motion to compel for an interlocutory appeal for several reasons. First, although district courts have differed strongly in their approaches to BitTorrent litigation, whether to require a party to comply with a subpoena is committed to the discretion of the district judge. *Nw. Mem'l Hosp.*, 362 F.3d at 928. Second, the controlling questions at issue here are not "pure" questions of law, which "the court of appeals could decide quickly and cleanly without having to study the record." *Ahrenholz v. Bd. Of Trs.*, 219 F.3d 674, 676–77 (7th Cir.2000). Rather, they are highly fact-dependent. And finally, an immediate appeal will not materially advance the termination of the litigation. It would instead cause considerable delay. In sum, the court does not believe that exceptional circumstances exist that would justify an interlocutory appeal in this case.

## V. PURZEL'S NOTICE OF AFFILIATES

The Northern District of Illinois' Local Rule 3.2 requires "[a]ny nongovernmental party, other than an individual or sole proprietorship," to "file a statement identifying all its publicly held affiliates." L.R. 3.2 (N.D.Ill.) "Affiliates" is defined, for the purposes of the rule as "any member" when the party is a "general partnership, joint venture, LLC, LLLP, or LLP." *Id.* This notice of affiliates must be filed "with the complaint or answer, or upon filing a motion, response, or petition, whichever occurs first." *Id.*

On January 31, 2013, Purzel filed along with its complaint "Plaintiff's Corporate Disclosure Statement Pursuant to Federal Rule of Civil Procedure 7.1 and Northern District of Illinois Local Rule 3.2." (ECF No. 3.) In this filing, Purzel advised the court only that "Purzel Video GmbH is not the subsidiary of any parent corporation, nor does any corporation hold 5% or more of Plaintiff's stock." (*Id.*)

This notice was improper. A GmbH is a German LLC. Local Rule 3.2 is clear that in the case of LLCs, affiliates include

**Purzel Video GmbH v. Does 1-108, Not Reported in F.Supp.2d (2013)**

2013 WL 6797364

"any member." A proper notice of affiliates for an LLC should disclose any member of the company. *Malibu Media, LLC v. John Does 1–6*, 291 F.R.D. at 208. Purzel must file an amended notice of affiliates that identifies its members.

## VI. CONCLUSION

The court resolves the motions pending in this case as follows. The motion to quash brought by Doe 101 is denied as moot. The remaining Doe defendants' motions to quash are denied. The Doe defendants' motions to sever are denied without prejudice. Count III of the complaint is dismissed. Purzel's motion to compel AT & T's compliance with the subpoena is granted, and the court denies AT & T's request to certify the

issues presented for immediate appeal. The subpoenas issued to the ISPs are modified to command production only of the Doe defendants' names and geographic addresses. For the time being, the defendants may proceed anonymously in this litigation, and Purzel shall not publish the Doe defendants' identities without further leave of the court; it must identify them only by IP address or Doe number in any filing with the court. Finally, Purzel is ordered to file an amended notice of affiliates that identifies its members, in compliance with Local Rule 3.2, within fourteen days of this order.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 6797364

**Footnotes**

1   Pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), Purzel has voluntarily dismissed with prejudice Does 55, 78, 79, 85, 90, 91, 101, 102, and 106. Purzel has dismissed Does 1, 4–6, 9, 11, 12, 15, 16, 19, 22, 24–27, 30, 31, 34, 37, 38, 40–42, 64, 67, and 73–75 without prejudice.

2   In this order, the court also refers to Doe defendants and ISP subscribers interchangeably for simplicity's sake, but it recognizes that at least some of the subscribers may not be the proper defendants in this action.

3   Similar motions to compel are currently pending in at least two other cases in this district.

---

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT 7

KeyCite Yellow Flag - Negative Treatment
**Declined to Follow by** Dallas Buyers Club, LLC v. Does 1-28, N.D.Ill., July 22, 2014

2013 WL 870618
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois,
Eastern Division.

MALIBU MEDIA, LLC, Plaintiff,

v.

David J. REYNOLDS, Felix Stanek, Gregory Blake
and John Does 2–8, 10, 11, 14, and 15, Defendants.

No. 12 C 6672. | March 7, 2013.

**Attorneys and Law Firms**

Mary K. Schulz, Schulz Law, P.C., Geneva, IL, Paul Joseph Nicoletti, Nicoletti & Associates, PLLC, Bloomfield Hills, MI, for Plaintiff.

Erin Kathryn Russell The Russell Firm Chicago, IL, for Defendants.

David J. Reynolds Grayslake, IL, pro se.

*MEMORANDUM OPINION AND ORDER*

VIRGINIA M. KENDALL, District Judge.

**\*1** Plaintiff Malibu Media, LLC ("Malibu Media"), a California film company that owns copyrights to a large number of pornographic films, filed this suit against David J. Reynolds, Felix Stanek, Gregory Blake, and eleven other anonymous defendants known to Malibu Media only by their alleged Internet Protocol ("IP") address (collectively, the "Defendants").[1] Malibu Media alleges that the Defendants committed direct and contributory infringement by copying and distributing a website containing fifteen federally registered copyrighted movies owned by Malibu Media in violation of the United States Copyright Act of 1976, as amended, 17 U.S.C. § 101 *et seq.* One of the unidentified defendants, John Doe 15 ("Doe 15"), moves for an Order to Show Cause for why Malibu Media's Complaint should not be dismissed for lack of standing. Doe 15 also moves to quash a subpoena served by Malibu Media upon Doe 15's Internet Service Provider, sever based on improper joinder,

and proceed anonymously through the dispositive motion phase of this case. For the reasons stated herein, Doe 15's Motion to Quash and Motion to Show Cause are denied. Doe 15's Motion to Proceed Anonymously is granted. Because the Court, on its own motion, severs all remaining Defendants in this case with the exception of Doe 15, Doe 15's Motion to Sever is denied as moot.

*BACKGROUND*

Malibu Media alleges that the Defendants were all users of "BitTorrent," a file sharing protocol (or set of computer rules) commonly used for distributing and sharing data on the Internet. According to Malibu Media each of the Defendants used the BitTorrent protocol to copy and distribute, without authorization, a torrent file containing fifteen of Malibu Media's registered works (the "Works"). Investigators retained by Malibu Media identified fifteen IP addresses, listed in Exhibit A of Malibu Media's Amended Complaint, that are alleged to have used the BitTorrent protocol to reproduce or distribute the Works. The individuals using these IP addresses are alleged to have engaged in infringing activity on different dates between June 9, 2012 and July 28, 2012 (Pl.Ex.A, Dkt. No. 24–1, p. 1.)

BitTorrent is a peer-to-peer file sharing system used to transfer files over the Internet. The BitTorrent protocol's popularity stems from its ability to distribute large files without imposing a heavy burden on the source computer and network. Before BitTorrent, users seeking to download data through peer-to-peer file sharing networks relied on the single-source technique, which required a user to form a one-to-one connection with a host computer for the purpose of downloading a file from that host. While the single-source method may have been adequate for transferring relatively small amounts of data, it proved cumbersome for users seeking to transfer larger data files. This is because the single source method requires one host computer and network to shoulder the entire burden of uploading a file to a particular user. The BitTorrent protocol overcomes this limitation by allowing users to join a "swarm" of host computers to download and upload fractions, or "pieces," of large files from each other simultaneously, resulting in a reduced load on any one computer. While use of the BitTorrent protocol itself is not illegal, many of its users use it to unlawfully download and distribute copyrighted works.

2013 WL 870618

**\*2** In order to join a swarm and use the BitTorrent protocol, a user must first download a BitTorrent "Client Program," a software program that serves as the user's interface during the process of uploading and downloading data. Individuals who join a swarm to download and distribute a particular file are called "peers." A swarm is composed of two types of peers: "leechers" and "seeds." "A leecher is a peer in the process of acquiring a file. A seed is a peer that already has a complete copy of the file and that remains in the torrent to serve the leechers. Every torrent requires at least one seed."Annemarie Bridy, *Is Online Copyright Enforcement Scaleable?*, 13 Vand. J. Ent. & Tech. L. 695, 700 (2011). When a seed user decides to distribute a new file, he or she uses the Client Program to create a "torrent descriptor file." The Client Program then takes the target computer file, also known as the "Initial Seed," and divides it into segments called "pieces." Once the initial seed is divided into pieces, the Client Program assigns each piece a unique alphanumeric identifier (a "hash identifier") and records each piece's hash identifier within the torrent descriptor file. After the Initial Seed is created and uploaded to a torrent site, other peers may begin to download and upload pieces of the computer file to which the torrent is linked. BitTorrent's groundbreaking feature—its ability to allow users to pull small pieces of a sought-after file from several host computers—ensures that no single host is burdened with the task of uploading the entire file to a particular user. In order to protect the integrity of each piece and to ensure that any modification to a piece can be reliably detected, the hash identifier for a particular piece is compared to the hash identifier recorded in the torrent descriptor file for that piece every time it is downloaded by another user. Thus the hash identifier works like an electronic fingerprint, identifying the source and origin of the piece and verifying that the piece is authentic, error-free, and uncorrupted.

In order to download a file using the BitTorrent protocol, a peer user must access a "torrent site," which indexes torrent files currently available for copying and distribution. As a peer receives pieces of the seed file, that peer automatically begins to upload those pieces to other peers in the swarm. In this way, BitTorrent's architecture resolves the free-rider problem that plagued older file-sharing networks such as Napster, Kazaa, and Limewire. Unlike its predecessors, which allowed users to download the content they desired without ever having to upload content to other peers, BitTorrent forces every downloader to also be an uploader of the transferred file, "making it architecturally impossible for any peer on the network to take without giving."*Id.* at 700–

01;*see also Call of the Wild Movie, LLC v. Does 1–1062,* 770 F.Supp.2d 332, 343 (D.D.C.2011). The BitTorrent protocol does not entirely avoid the free-rider problem, however, because a peer is only forced to "pay it forward" by uploading to other users *while he or she remains connected to the swarm.*A peer may still avoid the burden of uploading to other peers by disconnecting from the swarm after obtaining a complete copy of the desired file.

**\*3** Once a peer user has received every piece of the file, the BitTorrent Client Program rearranges the various pieces into their correct order, resulting in a file identical to the initial seed. This file becomes an additional seed within the same swarm, and remains available to other peers as long as the user that is in possession of the file remains connected to the swarm through the Client Program. The presence of the additional seed file also increases the speed, efficiency, and reliability of downloading activity for future peers entering the swarm. *See Digital Sin, Inc. v. Does 1–27,* No. 12 Civ. 3873(JMF), 2012 WL 203 6035, at \*1 (S.D.N.Y. June 6, 2012). Therefore, users derive a benefit from the interconnected architecture of the BitTorrent protocol even though they generally do not communicate with one another and will not have information about other users in their swarm other than their IP addresses. However, if a peer leaves the swarm after obtaining the seed file by closing the Client Program, changing the Client Program's settings to turn off automatic uploading, disconnecting from the Internet, or turning off his computer, peers who subsequently enter the swarm do not benefit from the earlier peer's activity.

## DISCUSSION

As the BitTorrent protocol allows users to share information anonymously, Malibu Media knows the eleven anonymous defendants only by their IP addresses. These IP addresses were assigned to the Defendants by their respective Internet Service Providers. On September 5, 2012, Malibu Media filed a motion for early discovery seeking leave to serve third party subpoenas pursuant to Rule 45 upon the unidentified Defendants' Internet Service Providers prior to a Rule 26(f) conference so that it may learn the Doe Defendants' true identities. Doe 15, one of the yet-to-be identified defendants in this action, argues the following in response to Malibu Media's motion for early discovery: (1) Malibu Media lacks standing to bring this action; (2) the subpoena seeking his identity should be quashed because it would impose an undue burden on Doe 15; (3) Doe 15 has been improperly joined

**Malibu Media, LLC v. Reynolds, Not Reported in F.Supp.2d (2013)**

2013 WL 870618

in this lawsuit and should be severed from the case; and (4) Doe 15 should be permitted to proceed anonymously through the dispositive motion phase of the proceedings because his privacy interests outweigh the public's interest in knowing his identity.

**I. Standing**

In order to acquire standing to pursue a claim for copyright infringement, a plaintiff must show the ownership of a valid copyright. *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991); *HyperQuest, Inc. v. N'Site Solutions, Inc.*, 632 F.3d 377, 381 (7th Cir.2011) ("The Copyright Act restricts the set of people who are entitled to bring a civil action for infringement to those who qualify as '[t]he legal or beneficial owner of an exclusive right under a copyright ....' ") (quoting 17 U.S.C. § 501(b)). Under the Copyright Act, copyright ownership "vests initially in the author or authors of the work."*Community for Creative Non–Violence v. Reid*, 490 U.S. 730, 737, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989) (quoting 17 U.S.C. § 201(a)). The author is "the party who actually creates the work, that is, the person who translates the idea into a fixed, tangible expression entitled to copyright protection."*Id; see also*17 U.S.C. § 102. When a copyrighted work is classified as a "work for hire," the "employer or other person for whom the work was prepared is considered the author."17 U.S.C. §§ 101, 201(b); *see also Billy–Bob Teeth, Inc. v. Novelty, Inc.*, 329 F.3d 586, 591 (7th Cir.2003).

**\*4** The Works at issue in this case were registered with the United States Copyright Office as "works for hire" under 17 U.S.C. § 201(b). According to Doe, these copyright registrations are defective because Malibu Media did not exist as an entity when any of the Works were created, thereby making it impossible for the works to be "made for hire" by Malibu Media. Doe maintains that as a result of this defect, Malibu Media lacks Article III standing in this action and argues that the subpoena seeking his personal identifiers should therefore be quashed. Malibu Media does not dispute that the Works were registered with the Copyright Office as "works for hire," but explains that this designation was made by mistake. According to Malibu Media, each of the Works was created by Brigham Field ("Field"), Malibu Media's owner, and assigned to Malibu Media when Field formed the company in February of 2011. By the time Malibu Media decided to register its copyrights for the Works with the United States Copyright Office, it had created a number of additional films, and therefore possessed copyrights to movies produced both before and after it came

into existence. Instead of registering the films under two separate classifications, Malibu Media accidentally registered *all* of its films as "works for hire,"—a classification that in fact should only have been applied to films created after Malibu Media was formed. Malibu Media states that it has since filed notices of correction with the United States Copyright Office to amend this classification.

The error in Malibu Media's registration with the United States Copyright Office does not deprive it of standing to enforce its copyrights. The Seventh Circuit has refused to invalidate copyrights based on challenges from alleged third-party infringers where the copyright at issue was mistakenly registered as a "work for hire" before the plaintiff entity existed and there is no dispute between the copyright owner and the transferee about the status of the copyright. *See Billy–Bob Teeth, Inc. v. Novelty, Inc.*, 329 F.3d 586, 591 (7th Cir.2003). In *Billy–Bob Teeth,* the plaintiff mistakenly registered his copyright as a "work for hire" to a corporation that did not exist when the work was created. *Id.* at 589.The district court determined that because the work predated the plaintiff's existence, the plaintiff could not enforce a copyright registered as a "work made for hire." *Id.* at 590.On appeal, the Seventh Circuit agreed that the plaintiff could not claim that the work was made for hire because, among other things, the corporation was not formed until one year after the work was authored. *Id.* at 591.However, the court found that the error on the registration was not fatal to the plaintiff's case. *See id* .(citing *Urantia Foundation v. Maaherra,* 114 F.3d 955, 963 (9th Cir.1997) ("[C]ase law is overwhelming that inadvertent mistakes on registration certificates do not ... bar infringement actions, unless the alleged infringer has relied to its detriment on the mistake, or the claimant intended to defraud the Copyright Office by making the misstatement."); *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147 (1st Cir.1994); *Whimsicality. Inc. v. Rubie's Costume, Co.*, 891 F.2d 452 (2d Cir.1989)).

**\*5** The facts here are strikingly similar. Field, like the plaintiff in *Billy–Bob Teeth,* registered his copyrights as "works for hire" to an entity that was not formed until after the work was authored. There is no dispute between Field and Malibu Media regarding the ownership of the copyrights, and Doe 15 does not refute that Field assigned all of his copyrights to Malibu Media, which then registered those copyrights with the United States Copyright Office. Based on these facts, the Court finds that the technical defect in Malibu Media's registration does not deprive it of standing to enforce its copyrights. *See Billy–Bob Teeth,* 329 F.3d at

592–93 ("[W]here there is no dispute between the copyright owner and the transferee about the status of the copyright, 'it would be unusual and unwarranted to permit a third-party infringer to invoke section 204(a) to avoid suit for copyright infringement.'") (quoting *Imperial Residential Design, Inc. v. Palms Development Group, Inc.,* 70 F.3d 96, 99 (11th Cir.1995)). Accordingly, Doe 15's Motion to Show Cause is denied.

## II. Motion to Quash

Federal Rule of Civil Procedure 45(a) permits the issuance of subpoenas to produce documents and other tangible things in the custody or control of a person. Fed.R.Civ.P. 45(a). Under Rule 45, a court must quash or modify a subpoena if it (1) fails to allow a reasonable time to comply; (2) requires a person who is neither a party nor a party's officer to travel more than 100 miles; (3) requires disclosure of privileged or other matter, if no exception or waiver applies; or (4) subjects a person to undue burden. Fed.R.Civ.P. 45(c)(3)(A)(i)-(iv). The party seeking to quash a subpoena under Rule 45(c)(3)(A) bears the burden of demonstrating that the information sought subjects a person to undue burden. As with other discovery issues, deciding whether to grant a motion to quash lies within the sound discretion of the district court. *See, e.g., Sullivan v. Gurtner Plumbing, Inc.,* No. 11–cv–6261, 2012 WL 896159, at *1 (N.D.Ill. Mar.13, 2012) (citing *United States v. Ashman,* 979 F.2d 469, 495 (7th Cir.1992)).

Here, Doe 15 seeks to quash a subpoena issued to Comcast Cable ("Comcast"), Doe 15's Internet Service Provider and a nonparty in this case. As a general rule, Doe 15 lacks standing to quash a subpoena issued to a nonparty unless he has a claim of privilege attached to the information sought or unless it implicates his privacy interests. *See United States v. Raineri,* 670 F.2d 702, 712 (7th Cir.1982) ("A party has standing to move to quash a subpoena addressed to another if the subpoena infringes upon the movant's legitimate interests."). District courts in this circuit are divided on the issue of whether a Doe defendant accused of copyright infringement has standing to object to a subpoena issued to his Internet Service Provider. *Compare Sunlust Pictures, LLC v. Does 1–75,* No. 12 C 1546, 2012 WL 3717768, at *2 (N.D.Ill. Aug.27, 2012) (Tharp, J.) (Doe defendant had standing to object to the issuance of a subpoena upon his Internet Service Provider because he possessed "at least a minimal privacy interest in the information requested by the subpoena ...."), *and Malibu Media, LLC v. John Does 1–14,* No. 12–CV–263, 2012 WL 6115653, at *2 (N.D.Ind. Dec. 10, 2012) (same), *with Third Degree Films, Inc. v. Does 1–2010,* No. 4:11 MC 2, 2011 WL

4759283, at *2 (N.D.Ind. Oct.6, 2011) ("A Doe defendant lacks standing to move to quash a subpoena on the ground of undue burden when the subpoena is directed to the ISP rather than to him.").

\*6 The Court need not decide the issue here, however, because even if Doe 15 has standing to object to the subpoena, he has not demonstrated that its issuance will cause him undue burden. In determining whether a subpoena imposes an undue burden, the Court must ask whether "the burden of compliance with [the subpoena] would exceed the benefit of production of the material sought by it."*Nw. Mem. 'l Hosp. v. Ashcroft,* 362 F.3d 923, 927 (7th Cir.2004). In this case,

Malibu Media served several subpoenas, including the subpoena implicating Doe 15, to the putative Defendants' Internet Service Providers. Because Doe 15 is not the party directed to respond to the subpoena and no action is required of him, he cannot show that the subpoena creates an undue burden on him. *See, e.g., Malibu Media, LLC v. John Does 1–14,* No. 1:12–CV263, 2012 WL 6115653, at *2 (N.D.Ind. Dec.10, 2012) ("[A]ny argument that this subpoena imposes an undue burden on Doe No. 12 fails because, as courts have consistently recognized, a subpoena directed at an ISP does not require the defendant to produce anything"); *Sunlust Pictures,* 2012 WL 3717768, at *2 ("The subpoena does not impose an undue burden on Doe because he is not the party directed to respond to it.); *Hard Drive Productions, Inc. v. Does 1–48,* No. 11–962, 2012 WL 2196038, at *3 (N.D.Ill. June 14, 2012) ("[T]he subpoenas do not burden [the anonymous defendant] because they do not require any action of [him]."); *First Time Videos, LLC v. Does 1–18,* No. 4:11–cv–69–SEB–WGH, 2011 WL 4079177, at *1 (S.D.Ind. Sept.13, 2011) ("[T]he issuance of a subpoena to the Internet Service Provider of putative defendants does not create an undue burden on the putative defendants because they are not required to produce anything."); *First Time Videos, LLC v. Does 1–500,* 276 F.R.D. 241, 250 (N.D.Ill.2011) (Castillo, J.) ("The subpoena's served on Doe Defendants' ISPs do not subject the Doe Defendant to an undue burden; if anyone may move to quash these subpoenas on the basis of an undue burden, it is the ISPs themselves, as they are compelled to produce information under the subpoena."); *Voltage Pictures, LLC v. Does 1–5,000,* 818 F.Supp.2d 28, 36 (D.D.C.2011) (finding Doe defendant lacked standing to quash as subpoena on the ground of undue burden when the subpoena is directed to the Internet Service Provider rather than to him because the subpoena requires the Internet Service Provider, not the

2013 WL 870618

Doe Defendant, to produce information). Doe 15's Motion to Quash is therefore denied.

### III. Motion to Proceed Anonymously

Doe 15 also moves, in the event that is Motion to Quash is denied, to proceed anonymously and for the entry of a protective order prohibiting the publication of his name through the dispositive motion phase of this case. Doe 15 argues that allowing his identity to be revealed publicly at this stage in the proceedings would enable Malibu Media to leverage Doe 15's fear of being embarrassed (for being named a defendant in a case involving illegally obtained pornography) to obtain settlement. Malibu Media has indicated to the Court that while it opposes a blanket protective order prohibiting *Malibu Media* from receiving Doe 15's identity, it does not object to allowing Doe 15 to remain anonymous through the end of discovery. However, even where a motion to proceed anonymously is unopposed, the court must make "an independent determination of the appropriateness" of the plaintiff's motion to conceal his name. *Doe v. City of Chicago,* 360 F.3d 667, 669 (7th Cir.2004) (finding error where district court judge did not make an independent determination of the plaintiff's unopposed motion to proceed anonymously).

*7 Courts have recognized that anonymous litigation may be permitted in "matters of a sensitive and highly personal nature such as birth control, abortion, homosexuality or the welfare rights of illegitimate children or abandoned families."*South Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe,* 599 F.2d 707, 712–13 (5th Cir.1979). In this specific context, this Court is not the first to recognize that claims against mass defendants and motions to discover defendants' identities may be used to shame defendants into settlement agreements where they may otherwise have a meritorious defense. *See Sunlust Pictures,* 2012 WL 3717768, at *5 ("Judges within this district have recognized that plaintiffs in these types of cases might unfairly threaten to disclose defendants' identities in order to improperly leverage settlement negotiations.") (citing *Hard Drive Productions,* 2012 WL 2196038, at *6. Another court has described the "common arc" of plaintiffs' litigating tactics in such cases:

> (1) a plaintiff sues anywhere from a few to thousands of Doe defendants for copyright infringement in one action; (2) the plaintiff seeks leave to take early discovery; (3) once the plaintiff obtains the identities

of the IP subscribers through early discovery, it serves the subscribers with a settlement demand; (4) the subscribers, often embarrassed about the prospect of being named in a suit involving pornographic movies, settle. Thus, these mass copyright infringement cases have emerged as a strong tool for leveraging settlements- a tool whose efficiency is largely derived from the plaintiffs' success in avoiding the filing fees for multiple suits and gaining early access en masse to the identities of alleged infringers.

*MCGIP, LLC v. Does 1–149,* No. 11 C 2331, 2011 WL 4352110, at *4 n. 5 (N.D.Cal. Sep.16, 2011).

On the other hand, the fact that suits of this nature settle quickly does not mean there is any wrongdoing on the part of copyright owners. *See Patrick Collins, Inc. v. John Does 1–9,* No. 12–CV–3161, 2012 WL 4321718, at *5 (C.D.Ill. Sep.18, 2012). It would be unfair to deprive owners of copyrights to pornographic material the same protections as owners of other copyrighted work. *See id; Malibu Media, LLC v. John Does 1–14,* No. 12–CV–263, 2012 WL 6019259 (N.D.Ind.2012) (finding that "the potential for embarrassment ... does not outweigh Plaintiff's statutory right to protect its property interest in its copyright"). Court must also consider the harm to the public interest in allowing Doe 15 to remain anonymous. *See Doe v. Smith,* 429 F.3d 706, 710 (7th Cir.2005) ("The public has an interest in knowing what the judicial system is doing, an interest frustrated when any part of litigation is conducted in secret.")

In this case, the harm to the public interest is minimal. Doe 15 does not request that the case move forward under seal, nor does he move for a blanket protective order barring disclosure of his identity for the duration of this litigation. Instead, Doe 15 asks that he be permitted to proceed under a pseudonym through the filing of dispositive motions in this case. This is especially appropriate where, as here, there is an increasing amount of uncertainty as to whether the IP address identified by Malibu Media's investigators actually reflects activity performed by the subscriber to that address. *See, e.g., Digital Sin v. Does 1–176,* 279 F.R.D. 239, 242 (S.D.N.Y.2012) (issuing protective order requiring that any information regarding Doe defendants be treated as confidential after expressing "concern [ ] about the possibility that many of the names and addresses produced in response

to Plaintiff's discovery request will not in fact be those individuals who downloaded [copyrighted pornography]"); *see also In re BitTorrent Adult Film Copyright Infringement Cases.* No. 11–3995, 2012 WL 1570765, *3 (E.D.N.Y. May 1, 2012) (recognizing that due to the wide use of wireless routers, "the assumption that the person who pays for Internet access at a given location is the same individual who allegedly downloaded a single sexually explicit film is tenuous, and one that has grown more so over time"). Furthermore, unlike cases where courts have disapproved of allowing a party to proceed anonymously, *see Doe v. City of Chicago,* 360 F.3d at 669; *Doe v. Blue Cross & Blue Shield United States of Wisconsin,* 112 F.3d 869, 872 (7th Cir.1997), it is the Defendant in this case who seeks the Court's leave to proceed anonymously, not the plaintiff. Under such circumstances, the Court is less concerned about parties seeking access to federal courts without revealing their identity. *See Sunlust Pictures.* 2012 WL 3717768, at *6 (allowing Doe defendant who allegedly downloaded pornography illegally using BitTorrent to proceed anonymously, noting that "because Doe (as a defendant) has not purposely availed himself of the courts, the public's interest in knowing his identity is weaker"). Additionally, while Malibu Media does not express its view toward allowing Doe 15 to proceed anonymously through the dispositive motion phase of these proceedings, it does not object to allowing Doe 15 to remain anonymous through the end of discovery. Lastly, Malibu Media will not be unfairly prejudiced because it will know Doe 15's true identity and will be able to investigate whether its claims have merit. The only consequence for Malibu Media is that it will be deprived the leverage to force Doe 15 into settlement by publicly disclosing his identity.

**\*8** Upon balancing the potential embarrassment to Doe 15 and the possibility that Malibu Media could use inappropriate litigation tactics to "coerce" a settlement, against the public's interest in knowing Doe 15's true identity and the risk of unfair prejudice to Malibu Media, the Court finds that allowing Doe to proceed by pseudonym is, at least at this stage of the proceedings, appropriate. The Court may revisit this issue if Malibu Media's claims survive dispositive motions.

**IV. Motion to Sever for Improper Joinder**
Doe 15 also moves to be severed from this case, arguing that he was improperly joined as a defendant because Malibu Media's allegations against him involve acts that are unrelated to the allegations against the other defendants in this case. A plaintiff may join two or more defendants in a single action under Federal Rule of Civil Procedure 20 if two

independent requirements are satisfied: (1) the claims against the defendants must be asserted "with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and (2) there must be a "question of law or fact common to all defendants."*See*Fed.R.Civ.P. 20(a)(2). The purpose of the rule is "to promote trial convenience and to expedite the resolution of disputes, thereby preventing multiple lawsuits," 7 Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice & Procedure* § 1652. "[T]he impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties, parties and remedies is strongly encouraged."*United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 724, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Although "transaction or occurrence" is not defined in Rule 20(a), courts interpret the term as "comprehend[ing] a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship."*Lozada v. City of Chicago,* No. 10 C 1019, 2010 WL 3487952 at *2 (N.D.Ill. Aug.30, 2010) (Aspen, J.) (quoting *Mosley v. Gen. Motors Corp.,* 497 F.2d 1330, 1333 (8th Cir.1974) ("[A]ll 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence.")); *see also Dean v. City of Chicago,* No. 09 C 1190, 2009 WL 2848865, at *2 (N.D.Ill. Aug.31, 2009) (Kennelly, J.) (also citing *Mosley* ). In addition to the requirements of Rule 20, the Court may also consider "other relevant factors in a case in order to determine whether the permissive joinder of a party will comport with the principles of fundamental fairness."*Chavez v. Illinois State Police,* 251 F.3d 612, 632 (7th Cir.2001) (quoting *Desert Empore Bank v. Ins. Co. of N. Am.,* 623 F.2d 1371, 1375 (9th Cir.1980)). For example, courts may consider "factors such as the motives of the party seeking joinder and whether joinder would confuse and complicate the issues for the parties involved."*See SBO Pictures, Inc. v. Does 1–57,* No. 12–22, 2012 WL 1415523, at *2 (D.Md. Apr.20, 2012). This Court has wide discretion in deciding whether to sever a party for improper joinder. *See Chavez,* 251 F.3d at 632 (citing *Intercon Research Associates, Ltd. v. Dresser Indus., Inc.,* 696 F.2d 53, 56 (7th Cir.1982)).

**\*9** In copyright infringement cases involving peer-to-peer file-sharing systems that predate the BitTorrent protocol, numerous courts have found that "the alleged use of the same peer-to-peer network by a group of Doe defendants to commit copyright infringement is insufficient to sustain the permissive joinder."*Hard Drive Prods., Inc. v. Does 1–188,* 809 F.Supp.2d 1150, 1156–59, 2011 WL 3740473,

**Malibu Media, LLC v. Reynolds, Not Reported in F.Supp.2d (2013)**

2013 WL 870618

at *7–9 (N.D.Cal. Aug.23, 2011) (analyzing pre-BitTorrent peer-to-peer case law); *see also IO Group, Inc. v. Does 1–19,* No. C 10–03851 SI, 2010 WL 5071605, at *3 (N.D.Cal. Dec.7, 2010) (collecting pre-BitTorrent case law). However, as explained above, the architecture of the BitTorrent file sharing system necessitates a degree of cooperation that did not exist in older incarnations of peer-to-peer file-sharing networks. Here, Malibu Media relies on the BitTorrent protocol's unique design to support its position that joinder is proper, arguing that by joining the same swarm to download a copy of the Works, the Defendants engaged in copyright infringement through a common series of transactions.

Due to the recent proliferation suits involving the BitTorrent protocol, courts across the country have been asked to consider whether downloading and uploading pieces of the exact same digital copy of a work through the BitTorrent protocol means that the defendants' actions are transactionally-related for the purposes of Rule 20(a)(2). *See SBO Pictures,* 2012 WL 1415523, at *2 (collecting cases). These courts have recognized that because a BitTorrent swarm forms around a specific copy of a file and not the copyrighted work itself, a plaintiff bringing a copyright infringement suit based on the alleged illegal use of BitTorrent must allege not only that the defendants downloaded the same copyrighted work, but that they did so by participating in the same BitTorrent swarm. *See, e.g., Hard Drive Prods. v. Does 1–53,* No. C–11–2330 EDL, 2011 WL 2837399, at *1 (N.D.Cal. July 14, 2011) ("Since a swarm develops around an originally seeded file, it appears that two or more different files of the same copyrighted work could potentially seed two or more different swarms."); *Pacific Cent. Intern. Ltd. v. Does 1–101,* No. C–11–02533 (DMR), 2011 WL 2690142, at *3 (N.D.Cal. July 8, 2011) ("BitTorrent users may upload different initial files of a given work, which results in the creation of distinct swarms.").

The issue before the Court in this case, however, takes the inquiry a step further. Here, the Court is asked to determine whether anonymous participation in the same BitTorrent swarm, without a showing that the Defendants accessed the swarm at the same time, is sufficient to allow for joinder under Rule 20(a)(2). To date, no Circuit Court of Appeals has addressed the issue. A number of district courts —within this District and across the country—have been faced with this question and reached different conclusions. *See Pacific Century Int'l v. Does 1–31,* No. 11–9064, 2012 WL 2129003, at *2 (N.D.Ill. June 12, 2012) (recognizing a split of authority and collecting cases). On the one hand, the

BitTorrent protocol, by virtue of its design, entails a degree of cooperative activity that did not exist in previous peer-to-peer file-sharing systems. Relying on BitTorrent's architecture, some courts have concluded that Doe defendants' infringing activities arise from the same series of transactions or occurrences if the illegally downloaded torrent file's unique hash identifier links each Doe defendant to the same Initial Seed and swarm. *See, e.g., Digital Sin, Inc. v. Does 1–176,* 279 F.R.D. 239, 244, at *5 (S.D.N.Y.2012) ("[I]t is difficult to see how the sharing and downloading ... as a part of a chain or 'swarm' of connectivity designed to illegally copy and share the exact same copyrighted file ... could not constitute a 'series of transactions or occurrences' for the purposes of Rule 20(a)."); *Pacific Century Int'l v. Does 1–31,* 2012 WL 2129003, at *2 (N.D.Ill. June 12, 2012) (Leinenweber, J.) (joinder appropriate where plaintiff alleged that various "anonymous defendants participated in the same swarm (at varying times spanning just over one month)"); *Patrick Collins, Inc. v. John Does 1–21,* 282 F.R.D. 161, 168–169 (E.D.Mich.2012) (holding that "the law of joinder does not have as a precondition that there be temporal distance or temporal overlap; it is enough that the alleged BitTorrent infringers participated in the same series of uploads and downloads in the same swarm," adding that "the technology underlying BitTorrent [makes] it different from other file sharing methods, for joinder purposes"); *First Videos, LLC v. Does 1–76,* 276 F.R.D. 254, 257 (N.D.Ill.2011) (Castillo, J.) (the fact that "the downloading is alleged to have taken place over the space of more than a month ... do[es] not make joinder inappropriate" considering "[t]he nature of the BitTorrent distribution protocol necessitates a concerted action by many people in order to disseminate files...."); *Hard Drive Prods., Inc. v. Does 1–55,* No. 11 C 2798, 2011 WL 4889094, at *5 (N.D.Ill. Oct.12, 2011) (Darrah, J.) (plaintiff's allegation that Doe defendants infringed its copyrights "through BitTorrent-the nature of which necessitates a concerted action by many people in order to disseminate files—is sufficient to satisfy Rule 20(a)").

**\*10** Other courts have determined that participation in a common swarm is a necessary, but insufficient condition to support joinder under Rule 20(a). These courts have found joinder improper absent a showing that the Doe defendants were present in the same swarm *at the same time.See, e.g., Sunlust Pictures, LLC v. Does 1–75,* No. 12 C 1546, 2012 WL 3717768, at *4 (N.D.Ill. Aug.27, 2012) (Tharp, J.) (finding joinder appropriate where plaintiff alleged that the defendants participated in the swarm at the same time, and observing

**Malibu Media, LLC v. Reynolds, Not Reported in F.Supp.2d (2013)**

2013 WL 870618

that "[t]he courts that have denied joinder in the BitTorrent context have generally done so because the plaintiff failed to allege that the defendants simultaneously participated in a single swarm or that the defendants distributed files directly among themselves"); *Digital Sins, Inc. v. Does 1–245,* No. 11–8170, 2012 WL 1744838, *2 (S.D.N.Y. May 15, 2012) (finding joinder improper where complaint "allege[d] that separate defendants shared access to a file containing a pornographic film in separate and isolated incidents over the course of 59 days," reasoning that such allegations merely asserted that the defendants "committed the same type of violation in the same way" and thus did not satisfy the requirements of permissive joiner) (internal quotations omitted); *In re BitTorrent Adult Film Copyright Infringement Cases,* No. 11–3995, 2012 WL 1570765, *11 (E.D.N.Y. May 1, 2012) (finding that plaintiff's assertion that defendants were acting in concert "rests on a thin reed" where the dates of downloading provided in plaintiff's complaint were weeks or months apart); *SBO Pictures, Inc. v. Does 1–57,* No. 12–22, 2012 WL 1415523, at *2 (D.Md. Apr.20, 2012) (denying joinder where downloads and uploads occurred over a threemonth period, stating that "the better-reasoned decisions have held that where a plaintiff has not plead that any defendant shared file pieces directly with one another, the first prong of permissive joinder is not satisfied"); *Cinetel Films, Inc. v. Does 1–1, 052,* No. JFM 8:11–cv02438, 2012 WL 1142272, at *6 (D.Md. Apr.4, 2012) (stating that "even if the IP addresses at issue in this motion all came from a single swarm, there is no evidence to suggest that each of the addresses acted in concert with all the others" because "the alleged infringement was committed by unrelated defendants, through independent actions, and at different times and locations," and adding that "[a] majority of courts have specifically held that the properties of BitTorrent are insufficient to support joinder"); *Third Degree Films, Inc. v. Does 1–131,* 280 F.R.D. 493, 496–97 (D.Ariz.2012) (joinder of an entire swarm that lasted many months improper because some participants may never overlap one another); *Raw Films, Ltd. v. Does 1–32,* No. 1:11–CV–2939–TWT, 2011 WL 6840590, at *2 (N.D.Ga. Dec.29, 2011) (Defendants not engaged in a common series of transactions as required by Rule 20 where plaintiff's complaint alleged that some Doe defendants were in the swarm over four months apart, finding that "differing dates and times of each Defendant's alleged sharing do not allow for an inference that the Defendants were acting in concert."); *Liberty Media Holdings, LLC v. BitTorrent Swarm,* 277 F.R.D. 669, 671–72 (S.D.Fla.2011) (finding joinder improper after "[a] close examination of Defendants' activity reveal[ed] that Defendants, subject to

one exception, used BitTorrent on different days and at different times over a two-month period," explaining that "[m]erely participating in a BitTorrent swarm does not equate to participating in the same 'transaction, occurrence, or series of transactions or occurrences' "); *On The Cheap, LLC v. Does 1–5011,* 280 F.R.D. 500, 502 ("Most recent decisions on this issue have concluded that the use of the BitTorrent protocol does not distinguish these cases from earlier rulings in P2P cases in which courts found that joining multiple Doe defendants was improper since downloading the same file did not mean that each of the defendants were engaged in the same transaction or occurrence."); *MCGIP, LLC v. Does 1–149,* No. 11–2331, 2011 WL 4352110, at *3 (N.D.Cal. Sep.16, 2011) (misjoinder where plaintiff "failed to show that any of the 149 Doe defendants actually exchanged any piece of the seed file with one another"); *Hard Drive Products, Inc. v. Does 1–188,* 809 F.Supp.2d 1150, 1164 (N.D.Cal.2011) (misjoinder where plaintiff conceded that "while the Doe Defendants may have participated in the same swarm, they may not have been physically present in the same swarm on the exact same day and time"); *Boy Racer, Inc. v. Does 1–60,* No. 11–1738, 2011 WL 3652521, at *4 (N.D.Cal. Aug.19, 2011) (severing defendants where "[p]laintiff [did] not plead facts showing that any particular defendant illegally shared plaintiff's work with any other particular defendant"); *CP Productions, Inc. v. Does 1–300,* No. 10 C 6255, 2011 WL 737761, at *1 n. 2 (N.D.Ill. Feb.24, 2011) (Shadur, J.) ("It would constitute a real stretch of the normal meaning of language for [the plaintiff] to call Rule 20(a)(2)(A) into play as the asserted predicate for lumping its separate asserted claims into a single lawsuit.").

**\*11** The latter line of cases reflects a more complete understanding of the mechanics of the BitTorrent protocol. Despite its cooperative design, the BitTorrent protocol's architecture alone does not compel the conclusion that anonymous defendants who download copies of the same file from the same swarm are engaged in a common transaction or series of transactions for the purposes of Rule 20(a)(2). Where a swarm continues to exist for an extended period of time, it is improbable that defendants entering a swarm weeks or months apart will actually exchange pieces of data. Furthermore, it is impossible for defendants who are not in a swarm coextensively to exchange any pieces of a file. A recently published Note in the Michigan Law Review explains by way of example:

> [I]magine a swarm developed around a file seeded by A. On Day 1, B, C, and D enter that swarm with A and

**Malibu Media, LLC v. Reynolds, Not Reported in F.Supp.2d (2013)**

2013 WL 870618

help each other acquire the file by exchanging pieces of the file with one another. Their exchange can fairly be called the same "series of transactions" for the purposes of Rule 20. Now, after the exchange, assume all four stay plugged into the swarm through Day 2, uploading pieces of the file to any other users who enter into the swarm. On Day 3, B, C, and D disconnect. The next day, E, F, and G enter the swarm with A. Since the swarm develops around the file, E, F, and G are part of the same swarm that A, B, and C were in. However, now the file exchange is occurring between A, E, F, and G. By contrast, B, C, and D have no involvement with the second exchange because they left the swarm. Given that B, C, and D were not and could not be sources for E, F, and G, the former group's acquisition of the file was a wholly separate series of transactions from the latter's. Instead, the only link between the parties is that they used the same peer-to-peer network to copy and reproduce a plaintiff's video.

Sean B. Karunaratne, Note, *The Case Against Combating BitTorrent Piracy Through Mass John Doe Copyright Infringement Lawsuits,* 111 Mich. L.Rev. 283, 295 (Nov.2012); *see also Third Degree Films,* 280 F.R.D. at 498 (finding joinder requirements not met based on "the fact that a particular swarm, including the swarm at issue in this case, can last for many months. During those months, the initial participants may never overlap with later participants").

The Court recognizes that this example paints a relatively simplified picture of the activity in a BitTorrent swarm, which in reality can involve thousands of users, dozens of seed files, and span for several months. Nevertheless, the example is instructive here. Exhibit A to Malibu Media's Amended Complaint—a chart listing the John Doe Defendants, their IP addresses, and "hit date"—indicates that the Defendants accessed the swarm at different dates and times between June 9, 2012 and July 28, 2012. (Dkt. No. 24–1.)Doe 15, the movant in this case, is alleged to have been part of the swarm on June 11, 2012 at 2:53 a.m. (*Id.*)He was preceded most recently in the swarm by Doe 4, who is alleged to have been present in the swarm on June 9, 2012 and followed by

Doe 8, who appears to have accessed the swarm on June 13, 2012.[2] (*Id.*) It is undisputed that any pieces of the Works downloaded or uploaded by Doe 15 were derived from the same Initial Seed as the pieces downloaded by Does 4 and 8. There is no indication, however, that Doe 4, or the Does that preceded him, remained in the swarm long enough to exchange pieces of the Works with Doe 15. Nor has Malibu Media demonstrated that Doe 15 remained in the swarm long enough to exchange data with Doe 8, or with Doe Defendants who joined the swarm after Doe 8. If Doe 4 left the swarm after obtaining the file, and Doe 15 did the same, Doe 15 would not have exchanged any data with either defendant despite having obtained the same seed file from the same swarm. Therefore, even assuming that Doe 15 was an actual infringer, entered the same swarm and downloaded the same seed file, Malibu Media has failed to demonstrate Doe 15 exchanged any piece of the seed file with any other defendant in this case.

**\*12** The Court also recognizes that it has previously held in a similar case that disputes related to joinder are premature at this stage of the proceedings. *See MGCIP v. Does 1–316,* No. 10 C 6677, 2011 WL 2292958, at \*2 (N.D.Ill. June 9, 2011). While a case decided a mere eighteen months ago might constitute "recent" case law in many other contexts, this particular area of law and the federal judiciaries understanding of the implications of joinder in such cases has developed significantly over the past eighteen months. This Court's own research reveals that prior to its decision in *MGCIP,* seven courts in this country had addressed whether it is appropriate to allow joinder of defendants who participate in the same BitTorrent swarm. Since then, 186 district and magistrate courts have addressed the issue. Through scores of proceedings, and with the help of undoubtedly thousands of pages of briefing on the issue, courts now have a more complete understanding of the mechanics of the BitTorrent protocol and its implications relating to joinder under Rule 20. Courts have also had the opportunity to witness the development and lifecycle of dozens of BitTorrent proceedings and appreciate more fully the complications that can arise as a result of mass joinder once such cases reach the more detailed phase of discovery. As evidenced by the cases cited above, courts throughout the country—on both sides of the swarm joinder debate—are in agreement that it is not only appropriate, but prudent to address the issue of joinder before litigation of this type is permitted to proceed to further.

Malibu Media argues that because the Defendants here downloaded the same torrent file, as evidenced by the file's

**Malibu Media, LLC v. Reynolds, Not Reported in F.Supp.2d (2013)**

2013 WL 870618

unique hash identifier, it can demonstrate "with mathematical certainty" that the Defendants committed the infringing acts through the same transaction or series of transactions. Relying on *Patrick Collins, Inc. v. John Does 1–21,* 282 F.R.D. 161, 168–169 (E.D.Mich.2012), Malibu Media submits there are only four possible ways Doe 15 could have acquired the file: (1) the Defendants connected to and transferred a piece of the Works from the initial seeder; (2) the Defendants connected to and transferred a piece of the Works from a seeder who downloaded the completed file from the initial seeder or from other peers; (3) the Defendant connected to and transferred a piece of the Works from other Defendants who downloaded from the initial seeder or from other peers; or (4) the Defendant connected to and transferred a piece of the Works from other peers who downloaded from other Defendants, other peers, other seeders, or the initial seeder.

Even assuming these four possibilities compose the entire universe of ways in which a Doe defendant could obtain a copyrighted work from a particular swarm, it does not follow that Doe defendants participating in the same swarm actually exchange any pieces of data with one another. If Doe 15 connected to the swarm on June 11, 2012 and downloaded a piece of the Works from other peers who downloaded from other Defendants, Doe 15 would have been engaged in a series of transactions—downloads and uploads—with peers, other Defendants, and seeders who were simultaneously active in the swarm. He could not fairly be said to have engaged in a transaction or series of transactions with peers who entered the swarm and left days, weeks, or months before his arrival. Furthermore, without showing that Doe 15 remained in the swarm after his June 11 "hit date," Malibu Media cannot maintain that Doe 15 acted in concert with Defendants that arrived subsequently by contributing to the chain of data distribution. Once a BitTorrent user disconnects from a swarm, any subsequent activity in that swarm is independent of the activity that took place during his presence. Malibu Media points to no facts alleging that the Doe Defendants who joined the swarm after Doe 15 obtained any pieces of the file from Doe 15, or from another peer who obtained the file from Doe 15. The only nonconjectural link between Defendants who access a swarm at different times is their mutual reliance on the Initial Seeder's upload of the file; they do not rely on each other, nor do they necessarily pave the way for later participants to obtain the file. For example, had Doe 15 never entered the swarm on June 11, 2012, the remaining Does would still have been able to download the Works as alleged so long as someone possessing the Initial Seed or a complete copy remained in the swarm.

**\*13** Malibu Media nevertheless argues that even if most of the Defendants' hit dates do not overlap with one another, the parties should be joined because the BitTorrent protocol allows for continuous seeding and distributing of copyrighted material weeks after a peer's initial download. Again Malibu Media relies on the analysis from *Patrick Collins v. John Does 1–21,* where the district court allowed joinder in a factually similar scenario, explaining:

> [I]t is not that an infringer would wait six weeks to receive the movie, it is that the infringer receives the Movie in a few hours and then leaves his or her computer on with the Client Program uploading the Movie to other peers for six weeks. Because the Client Program's default setting (unless disabled) is to begin uploading a piece as soon as it is received and verified against the expected Hash, it is not difficult to believe that a Defendant who downloaded the Movie on day one, would have uploaded the Movie to another Defendant or peer six weeks later.

*Patrick Collins,* 282 F.R.D. at 168.

All this means is that each putative defendant, having been active in the swarm at some point in time, is a *possible* source that *may* be able to distribute copyrighted material. The mere capability of a defendant to upload to other defendants after his or her hit date by leaving the Client Program running is insufficient to support the assumption that such transactions are related. *See, e.g., Hard Drive Productions,* 809 F.Supp.2d at 1164–65 (denying joinder and rejecting plaintiff's argument that Doe defendants' use of the same BitTorrent swarm makes each defendant a "possible" source that "may" be responsible for distributing the copyrighted file to the other defendants).*Patrick Collins* also suggests that Doe defendants who participate in the same BitTorrent swarm are transactionally-related for the purposes of Rule 20 because activity is "traceable back to a specific initial seed through a series of transactions."282 F.R.D. at 168. The Court finds it difficult to imagine how such a tenuous connection would suffice in any other context. If multiple defendants, without knowledge of one another and without relying on one another, were to physically travel to the same place at different times and dates to purchase a particular

**Malibu Media, LLC v. Reynolds, Not Reported in F.Supp.2d (2013)**

2013 WL 870618

piece of copyrighted material from various individuals, who themselves are unaware of one another but could theoretically trace their possession of the copyrighted material back to the same "original bootlegger" through varying degrees of separation, it is unquestionable that joinder would be improper. Without a showing that the Doe defendants actually exchanged pieces of the Works with one another, relied on each others' activity, or otherwise paved the way for each others' success in the swarm, all that is alleged is that the Defendants went to the same place at different times to engage in the same unlawful activity. While the law of joinder does not necessarily require temporal overlap or specific knowledge of other defendants, it does require more than mere allegations that two or more unrelated defendants stole the same product in the same way without ever interacting with one another. *See, e.g., LaFace Records, LLC v. Does 1–38,* 2008 WL 544992, at *7 (E.D.N.C. Feb.27, 2008) ("[M]erely committing the same type of violation in the same way does not link defendants together for the purposes of joinder"); *see also Liberty Media Holdings,* 277 F.R.D. at 672 ("Under the BitTorrent protocol, it is not necessary that each of the [Doe Defendants] participated in or contributed to the downloading of each other's copies of the work at issue.... Any 'pieces' of the work copied or uploaded by any individual Doe may have gone to any other Doe or to any of the potentially thousands who participated in a given swarm.") (quoting *Hard Drive Productions, Inc.,* 809 F.Supp.2d at 1163); *Raw Films, Ltd. v. Does 1–32,* No. 3:11cv532–JAG, 2011 WL 6182025, at *2 (E.D.Va. Oct.5, 2011) ("The mere allegation that the defendants have used the same peer-to-peer network to copy and reproduce the Work—which occurred on different days and times over a span of three months—is insufficient to meet the standards of joinder set forth in Rule 20."). Therefore, the Court finds that in order to join multiple anonymous defendants in a single suit for copyright infringement based on the alleged use of the BitTorrent protocol, a plaintiff must either (1) establish that the defendants were simultaneously present in the same swarm, or (2) show that they accessed the swarm in close temporal proximity (within hours of one another, not days or weeks) such that it can plausibly be inferred that the defendants may have downloaded and uploaded content through the same series of transactions.

*14 Of course there is no guarantee that peers simultaneously present in a swarm will actually exchange data. In swarms containing thousands of peers and dozens of seed files, two peers may, theoretically, be active in the swarm at the same time without ever relying on one another to obtain

a piece of the desired file. However, given the interconnected nature of data transfers that take place among peers who are present in a swarm *at the same time,* it would be reasonable to infer that such peers, at the very least, engaged in the same series of transactions for the purposes of Rule 20(a)(2). In this case, Malibu Media has plead no facts alleging that Doe 15 was simultaneously present in the swarm with any of the remaining Doe Defendants in this case, nor has it shown that Doe 15's "hit date" was in close temporal proximity to another Doe Defendant. Accordingly, the Court finds that any infringing acts by Doe 15 are not part of the same "transaction, occurrence, or series of transactions or occurrences" under Rule 20(a)(2).

Because Malibu Media cannot satisfy the first prong of the permissive joinder test—i.e., that the infringement arises "out of the same transaction, occurrence, or series of transactions or occurrences"—the Court need not address the second prong of the permissive joinder test to evaluate whether any question of law or fact is common to all the Defendants. The Court therefore finds that joinder of Doe 15 is improper under Rule 20. The Court therefore finds that joinder of Doe 15 as a defendant under Rule 20 is improper.

**VI. All Remaining Defendants with the Exception of Doe 15 are Severed from the Case**

Federal Rule of Civil Procedure 21 provides: "On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party."Fed.R.Civ.P. 21. Besides Doe 15, the Court notes that not a single defendant is alleged to have been present in the swarm at the same time as another defendant, and only two of the defendants originally sued in this case —Doe 3 and Doe 16—appear to have accessed the swarm within the same 24–hour time frame. (Ex. A, Dkt. No. 24– 1). Accordingly, Malibu Media has not demonstrated that *any* two defendants engaged in infringing activity as part of a common transaction, occurrence, or series of transactions or occurrences. Furthermore, it is unlikely that judicial economy will be achieved by trying what are, in essence, fourteen separate cases simultaneously. Each defendant is likely to assert a unique defense based on his or her situation, and will likely have to present evidence of that defense separately and independently. *See, e.g., Digital Sins,* 2012 WL 1744838, *2 ("Trying 245 separate cases in which each of the 245 different defendants would assert his own separate defenses under a single umbrella is unmanageable."). As another district court has recognized when assessing a similar mass litigation

**Malibu Media, LLC v. Reynolds, Not Reported in F.Supp.2d (2013)**

2013 WL 870618

strategy to enforce copyrights on illegally downloaded music files:

> **\*15** [ ]Subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiff' works. John Does 3 through 203 could be thieves, just as Plaintiffs believe, inexcusably pilfering Plaintiffs' property and depriving them, and their artists, of the royalties they are rightly owed ... Wholesale litigation of these claims is inappropriate, at least with respect to the vast majority (if not all) of Defendants.

*BMG Music v. Does 1–203,* Civ. A. 04–650, 2004 WL 953888, at \*1 (E.D.Pa. Apr.2, 2004); *see also VPR Internationale v. Does 1–1017,* No. 11–2068, 2011 WL 8179128, at \*2 (C.D.Ill. Apr.29, 2011) ("Where an IP address might actually identify an individual subscriber and address[,] the correlation is still far from perfect.... The infringer might be the subscriber, someone in the subscriber's household, a visitor with her laptop, a neighbor, or someone parked on the street at any given moment.").

Other courts have similarly recognized that the individualized issues related to each Doe defendant's defense would wash away any judicial economy that may have been achieved through a plaintiff's mass-litigation strategy. *See, e.g., In re BitTorrent Adult Film Copyright Infringement Cases,* 2012 WL 1570765, \*12 (individualized determinations pertaining to Doe defendants who "raised a panoply of individual defenses .... far outweigh[ed] the common questions in terms of discovery, evidence, and effort required.... Thus, swarm joinder complicates [copyright infringement cases based on the use of BitTorrent], resulting in a waste of judicial resources"); *Liberty Media Holdings,* 277 F.R.D. at 672 ("Plaintiff has already requested on two separate occasions an extension to hold a joint scheduling conference. Such delay is directly attributable to the joinder of Defendants in this action."); *Pacific Century Int'l. Ltd. v. Does,* No. C–11–02533 (DMR), 2011 WL 5117424, at \*3 (N.D.Cal. Oct.27, 2011) ("It is likely that Defendants would assert different factual and legal defenses, and would identify different witnesses. Case management and trial ... would be inefficient, chaotic, and expensive."). Courts have also recognized that such mass litigation might place a heavy burden on the Defendants during discovery. *See Pacific Century,* 2011 WL 5117424, at \*3 (observing that in cases against multiple Doe defendants, "each Defendant would have the right to be present at every other Defendant's depositions—a thoroughly unmanageable and expensive ordeal," and that *pro se* Defendants who do

not e-file would be "required to serve every other Defendant with a copy of their pleadings and other submissions through the pendency of the action at substantial cost"). While maintaining a single case would benefit Malibu Media by allowing it to sue multiple defendants with just one filing fee and set of pleadings, this is not a proper basis for joinder. *See Digital Sins, Inc.,* 2012 WL 1744838, \*2 ("The only economy that litigating these cases as a single action would achieve is an economy to the plaintiff—the economy of not having to pay a separate filing fee for each action brought. However, the desire to avoid paying statutorily mandated filing fees affords no bases for joinder."); *In re BitTorrent Adult Film Copyright Infringement Cases,* 2012 WL 1570765, \*12 (finding that in four consolidated copyrighted cases involving the BitTorrent protocol, plaintiffs "improperly avoided more than \$25,000 in filing fees by employing [their] swarm joinder theory"). The fact that plaintiffs typically file such cases hoping to quickly enter settlement agreements does not change the Court's determination of whether joinder is appropriate. The fact remains that if Malibu Media's claims against the various Doe defendants were to move forward into more detailed discovery and to trial, this case would impose significant procedural inefficiencies and burdens on both the Court and on almost every party in the case.

**\*16** As nearly every defendant in this case engaged in a separate series of transactions when downloading the Works and mass litigation against several defendants would prove unmanageable at trial and unfairly burdensome on the Defendants, the Court severs Malibu Media's claims against all defendants with the exception of Doe 15. *See, e.g., Digital Sins,* 2012 WL 1744838, \*2 (severing claims against all defendants except John Doe 1 after determining that joinder was improper in a BitTorrent case). While courts in this situation generally sever all defendants with the exception of the first, *see, e.g., Digital Sins, Inc.,* 2012 WL 1744838, at \*2, Rule 21 does not impose a requirement that the severing court retain the first named defendant over all others. *See* Fed.R.Civ .P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against *a* party.") (emphasis added). Having decided several issues pertaining to Doe 15, including Doe 15's Motion to Show Cause, Motion to Quash, and Motion to Proceed Anonymously, the Court finds, in the interest of judicial economy, that it is appropriate to retain Doe 15 rather than Defendant David J. Reynolds, the first-named defendant in this case. *See Sunlust Pictures,* 2012 WL 3717768, at \*3 ("A court may, on motion or on its own, add or drop a party or sever *any* claim against *any* party at any time.")

---

**Malibu Media, LLC v. Reynolds, Not Reported in F.Supp.2d (2013)**

2013 WL 870618

(citing Fed.R.Civ.P. 21) (emphasis added); *Walgreens Co. v. Networks–USA V, Inc..* No. 12 C 1317, 2012 WL 6591810, at * 1 (N.D.Ill.Dec.17, 2012) (St.Eve, J.) ("It is well-settled that a district court has broad discretion under Rule 21.") (citing *Chavez v. Illinois State Police,* 251 F.3d 612, 632 (7th Cir.2001) (appellate court "accord[s] wide discretion to a district court's decision concerning the joinder of parties")).

### *CONCLUSION*

For the reasons stated, Doe 15's Motion to Quash and Motion to Show Cause based on a lack of standing are denied. Doe 15's Motion to Proceed Anonymously is granted. Any publicly filed documents referencing Doe 15 should refer to Doe 15 by his "John Doe" identifier rather than his real name.

Pursuant to Fed.R.Civ.P. 21, all remaining defendants are severed from this case with the exception of Doe 15. The clerk is ordered to sever the claims against Defendants David J. Reynolds, Felix Stanek, Gregory Blake, and John Doe 11 from this case, to treat the claims against those defendants as separate actions, and to assign a separate docket number to each action. Malibu Media is directed to file separate amended complaints containing only its claims against each individual defendant. As the remaining defendants have been severed from this case pursuant to Fed.R.Civ.P. 21 and Doe 15 is the only remaining defendant in this case, Doe 15's Motion to Sever is denied as moot.

### All Citations

Not Reported in F.Supp.2d, 2013 WL 870618

**Footnotes**

1   On February 14, 2013, Malibu Media voluntarily dismissed Does 2–8, 10, 13, and 14 (Dkt.Nos.44, 47–48.)The only remaining defendants are David J. Reynolds, Felix Stanek, Gregory Blake, Doe 11, and Doe 15.

2   The purpose here is to illustrate by way of example the tenuous connection between Doe defendants who are joined in a suit by virtue of their presence in the same swarm. The Court recognizes that Does 4 and 8 have since been voluntarily dismissed from this action.

**End of Document**                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.